[No. A063082. First Dist., Div. Five. Jan. 27, 1995.]

CAROL BAIRD et al., Plaintiffs and Respondents, v.
COUNTY OF CONTRA COSTA, Defendant and Respondent;
BI-BETT CORPORATION, Real Party in Interest and Appellant.

**[Opinion certified for partial publication\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IIIB.2.

## Counsel

Crosby, Heafey, Roach & May, Ezra Hendon and Jacques B. Leboeuf for Real Party in Interest and Appellant.

Wendel, Rosen, Black & Dean and David Goldman for Plaintiffs and Respondents.

Victor J. Westman, County Counsel, and Diana J. Silver, Deputy County Counsel, for Defendant and Respondent.

OPINION

KING, J.—

## I. INTRODUCTION

In this case we hold that the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) does not require an environmental impact report (EIR) for a project that might be affected by preexisting environmental conditions but will not change those conditions or otherwise have a significant effect on the environment.

Bi-Bett Corporation appeals from a judgment granting a writ of administrative mandate compelling Contra Costa County (the County) to set aside the approval of construction of a residential facility for treating young male drug and alcohol users. The action is being prosecuted by neighboring landowners who claim that the proposed facility is near areas that are contaminated by oil, mercury, wastewater and sewage. We reverse the judgment.

## II. FACTS AND PROCEDURE

Bi-Bett Corporation operates the Diablo Valley Ranch (the Ranch), an addiction treatment facility for 56 adult residents, under a conditional use permit in an area zoned for agricultural use. Bi-Bett wants to add a 20-bed facility for treatment of male adolescent drug and alcohol users. The County granted grading and building permits in 1991. Thereafter, a group of neighboring landowners asserted that the existing conditional use permit did not allow the new construction. They obtained a writ of mandate compelling the County to consider their claim. Bi-Bett then applied for another conditional use permit.

After a period of investigation, the County's community development department recommended that the planning commission approve the project. At hearings before the planning commission and the board of supervisors, the neighboring landowners complained of adverse socioeconomic impacts on the area. They also asserted that Ranch land and adjacent property near the site of the proposed facility were contaminated by oil which had been stored in open ponds by a prior landowner (Shell Oil Company) more than 40 years previously, by a 1975 spill from a mercury mine which had been abandoned in the 1890's, and by wastewater and sewage from an overburdened septic system. They further claimed that Bi-Bett had violated the terms of its original conditional use permit by treating persons addicted to

substances other than alcohol, by purchasing and operating adjacent property as part of the Ranch, and by performing construction and renovations on the Ranch.

The planning commission approved the project, and the board of supervisors upheld the approval. The County issued the conditional use permit, as well as a negative declaration that the project will not have a significant effect on the environment and thus does not require an EIR. (Pub. Resources Code, § 21080, subd. (c).)

Carol Baird and six others (hereafter Baird), who are all neighboring landowners, filed a petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5) to compel the County to set aside the decision of the board of supervisors. The petition and Baird's trial brief included assertions that (1) an EIR is required because substantial evidence of existing contamination supports a fair argument that the project may have a significant effect on the environment, (2) the community development department staff incorrectly advised the board of supervisors regarding the standard for determining whether an EIR is required, (3) Bi-Bett should have sought a variance rather than a conditional use permit, (4) no substantial evidence supported the issuance of a conditional use permit, and (5) the County improperly refused to consider evidence of the purported prior violations of the original conditional use permit.

The court ruled for Baird on three of these issues, concluding in a statement of decision as follows: (1) there was substantial evidence supporting a fair argument that there may be oil contamination on the Ranch, thus requiring an EIR, (2) the board of supervisors was incorrectly advised regarding the standard for determining whether an EIR is required, and (3) the County denied Baird a fair hearing because it improperly refused to consider evidence of prior permit violations and "improperly discounted evidence of possible environmental problems not directly related" to the site of the proposed facility. Because of these conclusions, the court said it was "unnecessary to address any remaining issues." The court rendered judgment granting a writ of mandate compelling the County to set aside the decision approving the project.

### III. Discussion

#### A. *CEQA and the Requirement of an EIR*

Bi-Bett has mounted a two-pronged attack on the court's determination that an EIR is required. First, Bi-Bett contends there is no substantial

evidence of any contamination by oil (which the court found) or by mercury, wastewater or sewage (which the court did not address). ■ Second, Bi-Bett asserts that even if there is any contamination, CEQA does not require an EIR because the proposed project will not change that condition and thus will not have a significant effect on the environment. We need not and do not decide the first point, because Bi-Bett is correct on the second point.

In general, a proposed project requires an EIR if substantial evidence supports a fair argument that the project may have a significant effect on the environment. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1000-1003 [165 Cal.Rptr. 514].) " 'Significant effect on the environment' means a substantial, or potentially substantial, adverse *change* in the environment." (Pub. Resources Code, § 21068, italics added.) This means "an adverse change in any of the physical conditions within the area affected by the project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance." (Cal. Code Regs., tit. 14, § 15382; see Pub. Resources Code, §§ 21060.5, 21100, 21151.)

Baird's complaint is not that the proposed facility will cause an adverse change in the environment—that is, in any of the physical conditions within the affected area.[1] Rather, Baird's point is that *preexisting* physical conditions, consisting of the various forms of purported contamination, will have *an adverse effect on the proposed facility and its residents*. Any such effect is beyond the scope of CEQA and its requirement of an EIR. The purpose of CEQA is to protect the environment from proposed projects, not to protect proposed projects from the existing environment. CEQA is implicated only by adverse *changes* in the environment. (Pub. Resources Code, § 21068.) "The evaluation process contemplated by CEQA relates to the effect of proposed changes in the physical world which a public agency is about to either make, authorize or fund . . . ." (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 666 [124 Cal.Rptr. 635].) Adverse environmental changes are not contemplated here. The purported contaminations are preexisting (or do not exist at all).

Baird argues that a preexisting environmental condition invoked CEQA in *McQueen* v. *Board of Directors* (1988) 202 Cal.App.3d 1136, 1146-1147

---

[1]Baird summarily claims that the construction of the facility "may expose or exacerbate the existing ground contamination." But neither the portions of the record cited by Baird, nor any other parts of the record, support this claim. The site of the old oil ponds is 700 feet from the site of the proposed facility, the abandoned mercury mine is 2,000 feet away from the Ranch, the creek into which the 1975 mercury spill purportedly occurred is 1,000 feet from the site of the proposed facility, and the area served by the purportedly overburdened septic system is more than 700 feet away from the site of the proposed facility.

[249 Cal.Rptr. 439]. In that case, however, CEQA was invoked because of a potential for *changing* the environment, not simply because of the preexisting condition. The defendant in *McQueen* had sought to acquire property containing transformers filled with polychlorinated biphenyls (PCB), which government regulations require to be stored, used or disposed of in particular ways in order to minimize environmental danger. The court held that CEQA was invoked because the proposed acquisition would entail *maintenance* of the PCB on the property (whether by storage, use or disposal), and thus the project was "an activity with the potential for ultimately *changing* the environment." (*Id.* at p. 1147, italics added.) Here, in contrast, the proposed facility has no analogous potential to cause an adverse change in the environment. *McQueen* is inapposite.

Baird also suggests that if an EIR is not required for a project that might be adversely affected by preexisting environmental conditions, a residential development could be placed on or near a toxic waste dump, and this "simply does not make sense." This argument overlooks Health and Safety Code section 25220 et seq., which prescribe procedures for precluding the construction of residences on or within 2,000 feet of property containing hazardous waste. If the proposed youth facility is really threatened by hazardous waste, the project can be stopped pursuant to those procedures.

The courts are statutorily prohibited from interpreting CEQA "in a manner which imposes procedural or substantive requirements beyond those explicitly stated in" CEQA or its implementing guidelines. (Pub. Resources Code, § 21083.1.) To require an EIR in the present context, where the proposed project is challenged on the basis of preexisting environmental conditions rather than an adverse change in the environment, would impose a requirement beyond those stated in CEQA or its guidelines, and is thus prohibited. We therefore conclude that regardless of whether there was substantial evidence of preexisting oil (or other) contamination on the Ranch or adjacent property, the trial court erred in ruling that an EIR is required. The County properly issued the negative declaration.[2]

---

[2]Because of the absence of an adverse change in the environment, and the resulting inapplicability of the EIR requirement, it is inconsequential whether the board of supervisors was incorrectly advised regarding the standard for determining if an EIR is required. (Cf. *Lucas Valley Homeowners Assn.* v. *County of Marin* (1991) 233 Cal.App.3d 130, 146-148 [284 Cal.Rptr. 427] [county counsel's erroneous advice nonprejudicial unless more probable than not that result would otherwise have been different].) For the same reason it does not matter whether, as Baird claims, the County failed to require mitigation measures under CEQA or there was a serious public controversy concerning the proposed project; the absence of an adverse change in the environment makes these points irrelevant. It is likewise inconsequential whether, as Baird also claims, the initial study to determine if the project may have a significant environmental effect (Cal. Code Regs., tit. 14, § 15063) was defective. Baird does

## B. *The Conditional Use Permit*

### 1. *Evidence of Prior Permit Violations*

█ Bi-Bett also challenges the court's ruling as to issuance of the conditional use permit, contending the court erred in ruling that the County improperly refused to consider evidence of purported violations of the original conditional use permit.[3] Again, Bi-Bett has mounted a two-pronged attack, arguing that the County was aware of the purported violations but in any event was not required to consider such evidence. Once again, we need not and do not decide the first point, because Bi-Bett is correct on the second point.

This conclusion—that the County was not required to consider evidence of prior permit violations—is compelled by ordinance as well as case law.

The applicable ordinance requires the following findings before a conditional use permit is issued: "(1) That the proposed conditional land use shall not be detrimental to the health, safety and general welfare of the county; [¶] (2) That it shall not adversely affect the orderly development of property within the county; [¶] (3)That it shall not adversely affect the preservation of property values and the protection of the tax base within the county; [¶] (4) That it shall not adversely affect the policy and goals as set forth by the general plan; [¶] (5) That it shall not create a nuisance and/or enforcement problem within the neighborhood or community; [¶] (6) That it shall not encourage marginal development within the neighborhood; [¶] (7) That special conditions or unique characteristics of the subject property and its location or surroundings are established." (Contra Costa County Code, § 26-2.2008.) The ordinance does not require a finding that the applicant has not violated the terms of a previously issued conditional use permit.

In *Bakman* v. *Department of Transportation* (1979) 99 Cal.App.3d 665, 676-678 [160 Cal.Rptr. 583], which involved an application to the Department of Transportation (DOT) for an amended airport permit for the purpose of expansion, the court held that DOT had no duty to investigate claims of prior violations of the existing permit. "DOT may revoke an airport permit if

---

not assert any adverse changes that the initial study failed to address; the challenge to the project focuses on preexisting contamination, which is not an adverse change. Finally, Baird's claim of increased crime problems is not a proper subject of CEQA inquiry. "An economic or social change by itself shall not be considered a significant effect on the environment." (Cal. Code Regs., tit. 14, § 15382.)

[3]The community development department advised the board of supervisors that Baird's request for an investigation of purported zoning violations "is not material to this application."

it determines that the owner or operator has failed to comply with any rule or regulation of the department . . . . However, a proceeding involving an application for an amended permit for the purpose of expansion has no relation to a hearing for revocation of a permit. We therefore conclude that DOT had no duty to investigate any of the claimed violations of law in the hearing dealing with the proposed airport expansion and that the hearing officer properly limited the scope of the hearing to the issues before DOT in the permit application." (*Id.* at p. 678.) The analogy to the present case is clear: the County could revoke Bi-Bett's existing conditional use permit for the adult facility if the permit were violated, but such violations were unrelated to the application for a permit to add the youth facility.

The applicable ordinance did not require the County to consider evidence of purported violations of the original conditional use permit, and *Bakman* extablishes that such violations need not have been considered because they were unrelated to the pending application. Regardless of whether the County actually considered the purported violations, there was no error because the County was not required to do so.[4]

2.  *Other Issues**

. . . . . . . . . . . . . . . . . . . . . . .

## IV.  DISPOSITION

The judgment is reversed. Bi-Bett Corporation shall recover its costs on appeal.

Peterson, P. J., and Haning, J., concurred.

---

[4]The court also determined that the County "improperly discounted evidence of possible environmental problems not directly related" to the site of the proposed facility—an apparent reference to the purported nearby toxic contaminations. Because there is no evidence that the proposed facility would affect those purported "environmental problems" (*ante*, fn. 1), the point is inconsequential.

*See footnote, *ante*, page 1464.