[No. B098926. Second Dist., Div. Seven. Oct. 22, 1997.]

LOS ANGELES UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant,
v.
CITY OF LOS ANGELES, Defendant and Respondent.

1020

**COUNSEL**

Baker & Hostetler, Peter W. James and Bradley R. Hogin for Plaintiff and Appellant.

Parker, Covert & Chidester, Clayton H. Parker, Spencer E. Covert and Jonathan J. Mott as Amici Curiae on behalf of Plaintiff and Appellant.

James K. Hahn, City Attorney, Patricia V. Tubert and Jack L. Brown, Assistant City Attorneys, for Defendant and Respondent.

## OPINION

JOHNSON, J.—The Los Angeles Unified School District petitioned for a writ of mandate compelling the City of Los Angeles to vacate its resolution approving a development plan for the area of the San Fernando Valley known as Warner Center. The petition challenged the sufficiency of the environmental impact report (EIR) on which the city relied in approving the plan. We conclude that the evidence in the record does not support the EIR's finding the plan will have no significant impact on traffic noise at Canoga Park High School and Parkman Junior High School and the EIR is inadequate for failing to discuss whether air conditioning and that filtration are feasible measures for mitigating increased air pollution under the plan. Therefore we reverse the trial court's denial of a peremptory writ of mandate and remand the matter to the trial court for further proceedings consistent with this opinion.

### FACTS AND PROCEEDINGS BELOW

Warner Center in the San Fernando Valley is bounded by Vanowen Street to the north, De Soto Avenue to the east, the Ventura Freeway to the south and Topanga Canyon Boulevard to the west. Between 1970 and 1984 the City of Los Angeles (the City) adopted several land use plans for the area. In 1993, the City adopted the Warner Center Specific Plan (the plan). The plan provides for development of a 1.5-square-mile area in four phases with full build-out estimated to occur by the year 2010.[1]

The Los Angeles Unified School District (the School District) operates two schools within Warner Center: Canoga Park High School and Parkman Junior High School (the schools). In proceedings on the EIR and in its writ petition the School District alleged the schools will be adversely affected by increased traffic noise and air pollution resulting from the development

---

[1] Unless otherwise noted, the figures in the EIR for noise and air pollution are for full build-out under the plan.

authorized under the plan.[2] As we discuss more fully below, the EIR responded to these issues by finding the additional traffic noise near the schools would be "insignificant" and additional air pollution would occur throughout the project area despite any feasible mitigation measures. As a result of the latter factual finding, the City adopted a finding the benefits of the plan outweighed the unavoidable effects of increased air pollution. The City certified the EIR and approved the plan.

The School District brought a timely petition for writ of mandate in the superior court challenging the sufficiency of the EIR and the City's approval of the plan. The trial court denied the petition and the School District filed a timely appeal.

DISCUSSION

I. *Standard of Review.*

Before approving a project for which an EIR is required, the governmental agency must find either the project's significant environmental impacts have been mitigated or the unmitigated impacts are outweighed by the project's benefits. (Pub. Resources Code, § 21081.)[3] Here, the EIR found the increased level of traffic noise at the schools was "insignificant" and therefore no mitigation was required.[4] The EIR found the increased level of air pollution within the entire project area was significant and would remain so despite implementation of proposed mitigation measures. The City found this unmitigated impact was outweighed by the project's benefits. The trial court concluded there was no prejudicial abuse of discretion in these findings.

■■■■ On appeal we review the administrative record de novo to determine if a prejudicial abuse of discretion occurred; we are not bound by the trial court's conclusion. (*Gentry* v. *City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375-1376 [43 Cal.Rptr.2d 170].) "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (§ 21168.5.)

[2]Canoga Park High School is located at Vanowen and Topanga Canyon Boulevard. Parkman Junior High School is located on De Soto between Burbank Boulevard and the Ventura Freeway.

[3]All statutory references are to the Public Resources Code.

[4]The reference in the City's findings to noise mitigation applies to mitigation of construction noise during development, not to mitigation of the ongoing traffic noise resulting from the new development.

## II. *The EIR Is Inadequate Because It Fails to Consider the Cumulative Impact of Existing and Projected Traffic Noise at the Schools.*

The EIR in the present case concluded there would be no significant impact on the schools from increased traffic noise. The existing ambient noise level of 72.1 dBA already exceeds the Department of Health's recommended maximum of 70 dBA and would only increase by another 2.8–3.3 dBA at build-out, an increase the EIR considered "insignificant."

The City contends this conclusion is supported by California Environmental Quality Act (CEQA) guidelines which provide a project will normally have a significant effect on the environment only if it will "[i]ncrease substantially the ambient noise levels for adjoining areas." (CEQA Guidelines, appen. G, subd. (p).)[5] According to the EIR, an increase of less than five decibels in the ambient noise level has only "a marginal impact" on the hearer and is "generally not considered to be a major change in ambient noise." The City also relies on *Baird v. County of Contra Costa* (1995) 32 Cal.App.4th 1464, 1468 [38 Cal.Rptr.2d 93] for the proposition a project is only responsible for the significant environmental impacts *it* causes, not for significant impacts which already exist. Finally, the City contends the impact, if any, on the schools from increased noise cannot be determined until specific projects under the plan are presented for approval. An EIR for each specific project will be required.

The City ignores the statutory requirement the EIR consider the cumulative effects of the project on the environment (§ 21083, subd. (b); *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 394 [253 Cal.Rptr. 426, 764 P.2d 278]) and the direction in the Guidelines to consider the setting of the activity, and misinterprets the *Baird* decision.

Under section 21083, subdivision (b), cumulative impacts are those which are "individually limited but cumulatively considerable."[6] The statute defines "cumulatively considerable" to mean "the incremental effects of an individual project are considerable when viewed in connection with the effects of *past projects*, the effects of other current projects, and the effects of probable future projects." (Italics added.) The CEQA Guidelines explain the cumulative impact from several projects is "the change in the environment which results from the incremental impact of the project when added to

---

[5]Guideline references are to title 14 of the California Code of Regulations.

[6]While section 21083 governs the situations in which an agency must prepare an EIR, its provisions have also been applied to the contents of an EIR once it is determined an EIR must be prepared. (*Laurel Heights Improvement Assn. v. Regents of University of California, supra,* 47 Cal.3d at p. 394; and see discussion accompanying CEQA Guidelines, § 15065.)

other closely related past, present, and reasonably foreseeable probable future projects." (CEQA Guidelines, § 15355, subd. (b).) Most relevant to the present case, the Guidelines state cumulative impacts can result from "individually minor but collectively significant projects taking place over a period of time." (*Ibid.*)

Assessment of a project's cumulative impact on the environment is a critical aspect of the EIR. ■■ " 'One of the most important environmental lessons evident from past experience is that environmental damage often occurs incrementally from a variety of small sources. These sources appear insignificant, assuming threatening dimensions only when considered in light of the other sources with which they interact.' " (*Kings County Farm Bureau* v. *City of Hanford* (1990) 221 Cal.App.3d 692, 720 [270 Cal.Rptr. 650], quoting Selmi, *The Judicial Development of the California Environmental Quality Act* (1984) 18 U.C. Davis L.Rev. 197, 244, fn. omitted.) In the present case, for example, the noise level at Canoga Park High School exceeds the limit set by the State Department of Health despite the fact there have been several previous land use plans covering Warner Center. At least one of these plans, adopted in 1984, was approved after CEQA took effect.

■■ The EIR in the present case reasons the noise level around the schools is already beyond the maximum level permitted under Department of Health guidelines so even though traffic noise from the new development will make things worse, the impact is insignificant. This same reasoning was rejected in the *Kings County* case. (221 Cal.App.3d at p. 718.) There, the EIR concluded the increased ozone levels from the proposed cogeneration plant would be insignificant because the plant would emit relatively minor amounts of precursors, compared to the total volume of precursors already emitted in Kings County. This ratio theory, the court explained, "trivialize[d] the project's impact" by focusing on individual inputs, not their collective significance. "The relevant question to be addressed in the EIR is not the relative amount of precursors emitted by the project when compared with preexisting emissions, but whether any additional amount of precursor emissions should be considered significant in light of the serious nature of the ozone problems in this air basin." (*Ibid.*)

Likewise, the relevant issue to be addressed in the EIR on the plan is not the relative amount of traffic noise resulting from the project when compared to existing traffic noise, but whether any additional amount of traffic noise should be considered significant in light of the serious nature of the traffic noise problem already existing around the schools. We do not know the answer to this question but, more important, neither does the City; and

because the City does not know the answer, the information and analysis in the EIR regarding noise levels around the schools is inadequate.

The EIR also fails to take into account "the significance of an activity may vary with the setting." (Guidelines, § 15064, subd. (b).) It does not necessarily follow, and the EIR does not establish, an increase in the decibel level from 72.1 to 75.4 would have the same effect on a hearer trying to study in a classroom as a hearer waiting for a bus on a street corner.

The City cites *Baird* v. *County of Contra Costa, supra*, 32 Cal.App.4th 1464 for the proposition an EIR need not consider the impact of a proposed project on a site where there are already adverse environmental conditions. The City misreads *Baird*. At issue in *Baird* was the proposed expansion of a drug and alcohol rehabilitation facility. Opponents of the expansion contended an EIR was necessary because the site of the proposed expansion allegedly was contaminated by oil which had been stored in open ponds by a previous owner, a spill from a mercury mine and by wastewater and sewage from an overburdened septic system. The Court of Appeal concluded even if these allegations were true, requiring an EIR would turn CEQA on its head: "The purpose of CEQA," the court reasoned, "is to protect the environment from proposed projects, not to protect proposed projects from the existing environment. CEQA is implicated only by adverse *changes* in the environment. . . ." (32 Cal.App.4th at p. 1468, italics in original, citation omitted.) In other words, if the property was contaminated by oil, mercury and sewage then building a residential facility on the site might adversely affect the residents but would not affect the contaminated property. Other statutes were available to protect the residents from such contamination. (*Id.* at p. 1469.) *Baird* would only be relevant to the present case if a motorist claimed the noise from the schools would have a significant effect on traffic flowing through Warner Center.

Finally, the City argues it is too early to tell whether the plan will result in increased traffic noise around the schools and what impact, if any, such increased noise may have. The City points out that although maximum development levels are established in the plan, this does not mean a site will be developed to the maximum level allowed. For this reason, the plan provides for subsequent environmental review as specific project applications are presented to the City.[7] We find this argument lacks merit for several reasons.

[7]This is no less than what is required under the Supreme Court's interpretation of CEQA. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra*, 47 Cal.3d at p. 396.)

The School District is not contending the plan is inadequate because it fails to require subsequent EIR's for specific projects. Rather, the School District contends the EIR is inadequate because it brushes aside the projected noise increases as insignificant without considering their cumulative impact. (See discussion *ante*.)[8]

Furthermore, the City's argument it is too early to determine the noise impact on the schools is not supported by the record. Under the CEQA Guidelines, "[i]f, *after a thorough investigation*, a Lead Agency finds that a particular impact is too speculative for evaluation, the agency should note its conclusion and terminate discussion of the impact."[9] (Guidelines, § 15145, italics added.) The EIR in the present case did not find the impact of noise on the schools was "too speculative" for evaluation. On the contrary, the authors of the EIR took precise measurements of existing traffic noise around Canoga Park High School and then used a Federal Highway Administration computer model to predict noise levels under alternative versions of the plan. Using this computer model, the authors were able to predict how many vehicles would pass by the high school at specific times of the day and night. Based on these predictions the authors found the incremental increase in noise would be between 2.8 and 3.3 decibels over the existing noise level. We also note the City did not find future increases in noise and traffic were "too speculative" when it came to protecting residences in the area. The plan requires a soundwall be built along De Soto Avenue in order to protect homeowners from increased noise when De Soto is widened during the first phase of the plan. The plan also calls for a "Residential Neighborhood Protection Program" consisting of cul-de-sacs, street closures, turn restrictions, street narrowings and other features to divert traffic from residential neighborhoods onto Warner Center's major arteries including Vanowen and De Soto, which run past the schools.

We recognize a premature environmental analysis may be meaningless and financially wasteful. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 396.) "On the other hand, the later the environmental review process begins, the more bureaucratic and financial momentum there is behind a proposed project, thus providing a strong incentive to ignore environmental concerns that could be dealt with more easily at an early stage of the project. This problem may be exacerbated where, as here, the public agency prepares *and* approves the EIR for its

---

[8]It is entirely possible, of course, if the City employs the same analysis of incremental noise increases in future EIR's that it applied here, no individual project EIR would ever conclude there is a significant impact no matter how high the total noise level becomes.

[9]We note that in quoting this Guideline in its brief, the City eliminates the italicized language.

own project." (*Id.* at p. 395, italics in original.) In our view, in preparing an EIR for a specific plan with several phases of development, an environmental impact issue is ripe for consideration when it is "a reasonably foreseeable consequence" of the plan and the agency preparing the plan has "sufficient reliable data to permit preparation of a meaningful and accurate report on the impact" of the factor in question. (*Id.* at p. 396; accord, *Stanislaus Natural Heritage Project* v. *County of Stanislaus* (1996) 48 Cal.App.4th 182, 199 [55 Cal.Rptr.2d 625] [no basis "for deferring the identification of significant environmental impacts that the adoption of a specific plan can be expected to cause"].)

 As the record in this case demonstrates, full build-out under the plan was a sufficiently foreseeable consequence that it formed the basis for all of the analysis in the EIR, including the section on noise. It is only by the City's post hoc reasoning the noise impact on the schools has become too speculative to be considered. Moreover, as pointed out above, sufficiently reliable data was available to permit preparation of a meaningful and accurate report on the impact of noise on residences within the plan. The City has failed to suggest any reason why the same could not be done for the schools.

III. *The EIR Is Inadequate Because It Fails to Consider Whether Air Conditioning the Schools Would Be a Feasible Method of Mitigating the Impact of Air Pollution Resulting From Development Under the Plan.*

The EIR projected air pollution from vehicle emissions and stationary sources under the proposed plan would be significantly greater than under existing conditions. It found pollution thresholds are "exceeded for all pollutants under all conditions [and] the increase in mobile emissions due to the level of development possible under the [plan] is considered to be significant and adverse. The EIR concluded: "Taking into account the emissions likely to be produced [under] the revised Preliminary Plan, and considering the effectiveness of potential mitigation measures, it is likely that the implementation of the plan would result in a residual significant adverse impact on air quality."

 The School District maintains the EIR is inadequate because it fails to discuss feasible measures for mitigating the effects of increased air pollution on the schools including, specifically, the feasibility of air conditioning and filtering at the schools so the windows could be closed against the polluted air, as suggested in the district's comments to the draft EIR.

The Legislature has declared "it is the policy of the state that public agencies should not approve projects as proposed if there are feasible

alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects of such projects . . . ." (§ 21002.) Our Supreme Court has described the alternatives and mitigation sections as "the core" of an EIR. (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161].) Thus, an adequate discussion of the cumulative impact of a proposed plan "shall examine reasonable options for mitigating or avoiding any significant cumulative effects of a proposed project." (Guidelines, § 15130, subd. (b), (b)(3).)

As we have previously explained, however, an EIR need not analyze " ' "every *imaginable* alternative or mitigation measure; its concern is with *feasible* means of reducing environmental effects." ' " (*Concerned Citizens of South Central L.A.* v. *Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 826, 841 [29 Cal.Rptr.2d 492], italics in original.) Under the CEQA statute and guidelines a mitigation measure is "feasible" if it is "capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, social, and technological factors." (§ 21061.1; and see Guidelines, § 15364.)

█ In keeping with the statute and guidelines, an adequate EIR must respond to specific suggestions for mitigating a significant environmental impact unless the suggested mitigation is facially infeasible. (*San Francisco Ecology Center* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 584, 596 [122 Cal.Rptr. 100]; *Concerned Citizens of South Central L.A.* v. *Los Angeles Unified School Dist., supra*, 24 Cal.App.4th at pp. 841-842.) While the response need not be exhaustive, it should evince good faith and a reasoned analysis. (*San Francisco Ecology Center, supra*, 48 Cal.App.3d at p. 596; Guidelines, § 15088, subd. (b).)

█ The EIR did not directly respond to the School District's suggestion air conditioning and filtering might prove feasible means of reducing the impact on the schools of increased air pollution resulting from development under the proposed plan. In responding to the School District, the EIR projected that by the time of full build-out under the plan in 2010, carbon monoxide levels around the schools would be "slightly lower . . . as a result of anticipated improvements in vehicle technology which would more than offset the additional traffic generated by future development within Warner Center under the revised Preliminary Plan." The response went on to say "[a] more detailed analysis of the potential health effects of CO emissions and fugitive dust . . . is not required for an EIR on a Specific Plan."

As to the first response, we note that even though the EIR projects the levels of carbon monoxide around the schools will be "slightly lower" in the

future it does not characterize the impact of air pollution on the schools as "insignificant" as it did with respect to noise levels. (See discussion, *ante.*) Nor could it do so in good faith given its finding "it is likely that the implementation of the plan would result in a residual *significant* adverse impact on air quality."[10]

As to the second response, we have previously addressed the City's attempt to postpone consideration of significant environmental impacts until specific projects are proposed for development under the plan. (See discussion, *ante.*) Given the EIR's discussion of the air pollution impact of the plan, it is evident increased air pollution is a reasonably foreseeable consequence of the plan and the authors of the EIR had sufficiently reliable data to permit preparation of a meaningful and accurate report on its impact.

Air conditioning and filtering are not facially infeasible measures for mitigating the effects of increased air pollution on the schools. Installation of air conditioning and filtering equipment at two schools does not seem to us the sort of task that would take an unreasonable period of time. Furthermore, the cost of installation and operation, which the School District estimates at approximately $3 million over 15 years is minimal compared to the $674 million the City has earmarked for the "Residential Neighborhood Protection Program" and other mitigation measures under the plan. (See discussion, *ante.*) Nor do there appear to be environmental, legal, social and bureaucratic factors which would stand in the way of this mitigation measure as there were in the *Concerned Citizens* case. (24 Cal.App.4th at pp. 841-842.) We do not mean to imply the City *must* find air conditioning and filtering are feasible mitigation measures. This is not our call. Our role is merely to determine whether the EIR provides the City sufficient information on which to base its judgment whether to approve the plan. (*Id.* at p. 841.) In the present case, it does not.[11]

We address briefly the City's post hoc justification for not considering the feasibility of air conditioning. The City argues classroom air conditioning

---

[10]The study of air pollution at Canoga Park High School, it should be noted, only looked at carbon monoxide levels and did not consider nitrogen oxides, ozone or PM10, which also result from vehicle emissions. The health problem caused by ozone, the EIR acknowledges, "is particularly acute in children." Furthermore, the carbon monoxide study was conducted at the evening peak traffic hour, when the students would not be in school.

[11]At oral argument, the City seemed to suggest because it made a finding under section 21081, subdivision (b) that the benefits of the project outweighed the significant effects on the environment, there was no need to determine whether these significant effects on the environment could be mitigated. We disagree. Under the City's interpretation of CEQA, there would be no need to prepare an EIR at all; the development agency could simply "find" the overriding benefits of the project outweigh any significant environmental impacts which might result. In any event, subdivisions (a) and (b) of section 21081 when read together make

and air filtration are not "reasonably feasible since such interior improvements would not do anything to mitigate air quality outdoors." CEQA, however, does not speak in terms of absolute avoidance of environmental effects but of mitigation measures "which would substantially lessen the significant effects of proposed projects." (§ 21002.) The EIR before us does not address the question whether air conditioning and filtration would "substantially lessen" the impact of air pollution on the schools and is, therefore, inadequate.

### DISPOSITION

The judgment is reversed and the cause is remanded to the trial court which shall issue a peremptory writ of mandate directing the City to vacate its certification of the EIR and approval of the Warner Center Specific Plan. The writ shall direct the City, on any further proceedings on the EIR and the plan, to address the issues of noise and air pollution at Canoga Park High School and Parkman Junior High School as set forth in this opinion. The trial court is further directed to retain jurisdiction over this matter and to grant any further appropriate relief. Appellant shall recover costs on appeal.

Lillie, P. J., and Woods, J., concurred.

A petition for a rehearing was denied November 20, 1997, and respondent's petition for review by the Supreme Court was denied January 14, 1998.

---

clear the development agency must find mitigation measures are infeasible *and* the benefits of the project outweigh the unmitigated effects on the environment.