[No. B155552. Second Dist., Div. Six. Feb. 27, 2003.]

SANTA CLARITA ORGANIZATION FOR PLANNING THE ENVIRONMENT et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Respondent; THE NEWHALL LAND AND FARMING COMPANY et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

716

## COUNSEL

Law Office of Alyse Lazar; Law Office of K. M. Neiswender, Kate M. Neiswender for Plaintiffs and Appellants.

Frank O. Sieh, County Counsel, and Dennis L. Slivinski, Assistant County Counsel, for County of Ventura as Amicus Curiae on behalf of Plaintiffs and Appellants.

Lloyd W. Pellman, County Counsel, and Peter J. Gutierrez, Deputy County Counsel, for Defendant and Respondent.

Nossaman, Guthner, Knox & Elliott, Robert I. McMurry, A. Catherine Norian and Bradly S. Torgan for Real Parties in Interest and Respondents.

## OPINION

**GILBERT, P. J.**—An environmental impact report for a housing development must contain a thorough analysis that reasonably informs the reader of the amount of water available. The dream of water entitlements from the

incomplete State Water Project (SWP) is no substitute for the reality of actual water the SWP can deliver.

This appeal arises under the California Environmental Quality Act. (Pub. Resources Code, § 21000 et seq., hereafter CEQA.)[1] The Santa Clarita Organization for Planning the Environment and the Friends of the Santa Clara River (hereafter collectively SCOPE) petitioned the trial court for a writ of mandate. The petition requested that the court order the County of Los Angeles (hereafter County) to vacate its resolution certifying the final environmental impact report (EIR) and related resolutions approving the West Creek development project.

The trial court denied SCOPE's petition. We conclude the County erred in approving the EIR because the water service portion of the EIR is inadequate. We reverse.

## FACTS

West Creek is a proposed mixed residential and commercial development in the Santa Clarita Valley area of northern Los Angeles County. The project includes 2,545 housing units, 180,000 square feet of commercial retail space and 46 acres of community facilities. The County served as the lead agency in preparing the EIR for the project. The project developers are The Newhall Land and Farming Company and Valencia Corporation (hereafter collectively Newhall).

The water service portion of the EIR states that the Castaic Lake Water Agency (Castaic) is the water wholesaler for the Santa Clarita area. It provides water to four local suppliers including the Valencia Water Company (Valencia). Valencia will provide water to West Creek. The EIR estimates West Creek will demand 2,194 acre feet of water per year (afy).

The draft EIR states that Castaic has an "existing water supply" of 107,000 afy. More specifically, a chart indicates Castaic's existing water supply is between 97,700 and 106,700 afy. This supply is composed of 32,500 afy from the Alluvial Aquifer; between 11,000 and 20,000 afy from the Saugus Aquifer; and 54,200 afy as "current entitlements" from the SWP. In addition, Castaic predicts that it will be able to add 18,000 afy of recycled water to its supply. Because current water demand within the Castaic service area is only 48,858 afy, the draft EIR concludes that Castaic presently has sufficient water to meet current demand including West Creek.

---

[1] All statutory references are to the Public Resources Code.

The draft EIR states that Valencia has an existing water supply of 45,000 afy and a current demand of 22,000 afy. Thus West Creek would have sufficient water under current supply and demand.

The draft EIR then discusses long-term cumulative impact of development on water supply. The report considers two "scenarios." The first scenario considers existing and projected development, including West Creek, within the Valencia service area. Considering a buildout of the Valencia service area only, the report projects a total water demand of 32,811 afy and a supply of 45,000 afy. The report therefore concludes Valencia has sufficient water to meet present and future needs.

The second scenario considers not only the Valencia service area, but present and projected development of the entire Santa Clarita Valley. This would generate a demand for 157,500 afy. But the total supply including 54,200 afy of state water entitlements will only be between 115,700 to 124,700 afy. The draft EIR concludes a buildout of the entire valley will create a water shortage of between 32,800 to 41,800 afy. Even without West Creek, the water supply will be inadequate to meet projected demand.

The draft EIR states, however: "[Castaic] has the opportunity under the Monterey Agreement to purchase additional entitlement at the present time. [Castaic] has undertaken negotiations to acquire additional Monterey Agreement entitlement of 41,000 acre feet per year . . . . In the long term, the receipt of this additional entitlement along with the addition of water banking and other storage opportunities will provide the water needed for planned growth within the Santa Clarita Valley."

Under the heading "Unavoidable Significant Impacts," the report states in part, "[E]ach development project in the Santa Clarita Valley, including the proposed project, would be required to demonstrate water availability as part of the subdivision approval process. So long as each proposed development demonstrates water availability prior to the project approval, cumulative development would not result in an unavoidable significant cumulative impact on Santa Clarita Valley water resources."

In the comment and response portion of the EIR, SCOPE claimed there is no guarantee water purveyors would receive 100 percent of their SWP entitlements, and that Castaic uses 50 percent for planning purposes.

The EIR responded that after the draft EIR was released, Castaic purchased an additional SWP entitlement of 41,000 afy from the Kern County Water Agency. That increased Castaic's "wet year supply" to 156,900 afy,

consisting of 40,000 afy from the Alluvial Aquifer, 20,000 afy from the Saugus Aquifer, 95,200 afy from the SWP and 1,700 afy from recycled water. The figures were taken from Castaic's most recent water report.

The response stated the "dry year" supply is 142,800 afy, taking into account a 50 percent reduction in the state water supply and a lower draft from the aquifers. Even assuming a 50 percent delivery factor for periods of "extreme drought," Castaic will still have adequate supplies for a buildout of the Santa Clarita Valley.

The response also stated that the 50 percent figure suggested by SCOPE was flawed. Castaic is currently collecting funding for a capital improvement program that includes the acquisition of new water supplies and water banking. In light of this program and other state programs, the response concluded it is entirely appropriate to consider 100 percent of SWP entitlement for long-term planning purposes.

The final EIR incorporated the draft EIR and the comments and response to the draft. A summary table of project impacts and mitigation measures contained in the final EIR states in part: "On a cumulative basis, buildout of the Santa Clarita Valley would result in a mid-point demand that could exceed 157,000 AFY. In comparison, [Castaic] and Valencia Water Company can only account for supplies ranging from 156,700 to 165,700 AFY . . . . While [Castaic] has undertaken programs to increase future water supplies, based on current conditions there could be a deficit of supply. . . . However, . . . each development project in the Santa Clarita Valley, including the proposed project, would be required to demonstrate water availability as part of the subdivision approval process. So long as each proposed development demonstrates water availability prior to the project approval, cumulative development would not result in an unavoidable significant cumulative impact on Santa Clarita Valley water resources."

DISCUSSION

I

SCOPE contends the EIR is inadequate in that it fails to state accurately the amount of water available.

The contention is based on the EIR's use of state water "entitlements" to calculate the water supply. SCOPE points out that in *Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 908, footnote 5 [100 Cal.Rptr.2d 173], the appellate court noted the difference between water entitlements and the amount of water the SWP can actually deliver:

"The original long-term contracts between DWR [Department of Water Resources] and the water contractors were predicated on the state's contractual obligation to build out the SWP so as to deliver 4.23 maf [million acre feet] of water to the contractors annually. Each of the contractors is allocated a percentage of the 4.23 maf in table A of the long-term contracts. The allocation is referred to as an entitlement. Therefore, cumulatively, the contractors are 'entitled' to 4.23 maf of water annually.

"The SWP, however, has never been completed and the state cannot deliver 4.23 maf of water annually. The entitlements represent nothing more than hopes, expectations, water futures or, as the parties refer to them, 'paper water.' Actual, reliable water supply from the SWP is more in the vicinity of 2 to 2.5 maf of water annually. Consequently, there is a huge gap between what is promised and what can be delivered."

In addition, SCOPE cites *Friends of the Santa Clara River v. Castaic Lake Water Agency* (2002) 95 Cal.App.4th 1373, 1376 [116 Cal.Rptr.2d 54], for the proposition that the SWP cannot deliver all of the entitlements.

The purpose of an EIR is to inform the public and its responsible officials of the environmental consequences of decisions before they are made. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502].) Among the matters that the EIR must consider is the cumulative impact of past, present and probable future projects. (§ 21083, subd. (b); *Los Angeles Unified School Dist. v. City of Los Angeles* (1997) 58 Cal.App.4th 1019, 1024-1025 [68 Cal.Rptr.2d 367].)

In reviewing an agency's determination under CEQA, we must determine whether an agency prejudicially abused its discretion. (§ 21168.5; *Dry Creek Citizens Coalition v. County of Tulare* (1999) 70 Cal.App.4th 20, 25 [82 Cal.Rptr.2d 398].) An abuse of discretion occurs where the agency has not proceeded in a manner required by law, or its decision that the EIR is adequate is not supported by substantial evidence. (*Dry Creek Citizens Coalition*, at p. 26.) To be adequate, the EIR must include sufficient detail to enable those who did not participate in its preparation to understand and "meaningfully" consider the issues raised by the proposed project. (*Ibid.*)

Here the EIR attempts to analyze the cumulative impact of past, present and future development on the amount of water available. The EIR relies heavily on SWP entitlements in calculating the total available water supply. As the court in *Planning & Conservation League* points out, the entitlements are based on a state water system that has not been completed.

There is a vast difference between entitlements and the amount of water that SWP can actually deliver.

The draft EIR makes no attempt to calculate or even discuss the differences between entitlement and actual supply. The final EIR contains a response to SCOPE's concern about the reliability of SWP water, but the response is inadequate. In calculating the wet year supply, the response included 100 percent of Castaic's SWP entitlement. But because the entitlement is based on a water system that is not completed, there is no justification for believing the SWP will be able to deliver 100 percent of all entitlements, even in wet years. As for periods of "extreme drought," the response used 50 percent of the entitlement in calculating the amount of water available. But there is nothing to suggest the SWP will be able to deliver 50 percent of all entitlements during periods of extreme drought.

Significantly, the response contains no estimates from the DWR, the agency that manages the SWP, as to how much water it can deliver, whether in wet years, average years and in periods of drought. It may be that no such reliable estimates are available. If that is the case, the EIR should say so. Instead, the comment and response portion of the EIR attempts to dismiss SCOPE's concerns. It states a program undertaken by Castaic and other state programs justify considering 100 percent of SWP entitlements in long-term planning. But the response gives no details of such programs or an estimate of how much water they might make available if they ever get past the funding stage. A reasonable correlation between water to be produced by these projects and SWP entitlements is left to the imagination. Even taking these programs into account, a reliable estimate of SWP deliveries is crucial to an understanding of the cumulative impact of development.

In an effort to show the EIR provides sufficient information on the reliability of SWP supplies, Newhall points to portions of the record in addition to SCOPE's comment and the response. Much of the information Newhall points to is in the administrative record, but is not in the EIR. Most of the remaining information was submitted by project opponents in response to the draft EIR and is scattered here and there in EIR appendices. For example, Newhall cites a page from a brief submitted by Friends of the Santa Clara River in a different case; a page from a trial court's statement of decision in an unrelated case; and a page from a Valencia document stating generally that the SWP is not complete "and supplies are subject to reduction when state-wide droughts occur." Only one report, prepared by consultants, purports to analyze the reliability of water supplies using a DWR computer model. It purports to analyze SWP's ability to deliver only 25,000 afy. It is

buried in an appendix. The EIR contains no response to that report or any of the other submissions beyond that given to SCOPE's comment.

█ It is not enough for the EIR simply to contain information submitted by the public and experts. Problems raised by the public and responsible experts require a good faith reasoned analysis in response. (*Cleary v. County of Stanislaus* (1981) 118 Cal.App.3d 348, 357 [173 Cal.Rptr. 390].) The requirement of a detailed analysis in response ensures that stubborn problems or serious criticism are not "swept under the rug." (*Ibid.*)

█ Here the draft EIR gives no hint that SWP entitlements cannot be taken at face value. It is only in response to comments and submissions by project opponents such as SCOPE that the EIR obliquely acknowledges that the entitlements may not be all they seem. Instead of undertaking a serious and detailed analysis of SWP supplies, the EIR does little more than dismiss project opponents' concerns about water supply. Water is too important to receive such cursory treatment.

The final EIR's acknowledgement that there "could be a deficit of supply" does not cure the defect. Without some reasonably accurate estimate of SWP's ability to deliver water, it is impossible to judge how likely or how deep the deficit might be.

Nor is the inadequacy cured by the requirement that Newhall demonstrate an adequate supply of water before the tract map is recorded. An EIR's purpose is to inform. This purpose is not satisfied by simply stating information will be provided in the future.

Newhall argues that *Friends of the Santa Clara River* cannot be used to require reopening the County's approval of West Creek. Newhall points out that the case was decided after the County approved the West Creek EIR. It cites CEQA Guideline 15162, subdivision (c) (Cal. Code Regs., tit. 14, § 15162, subd. (c)) for the well-established rule that once a project is approved new information does not require reopening the approval.

But SCOPE states it cites *Friends of the Santa Clara River* only to show that SWP entitlements cannot be taken at face value. That the SWP cannot deliver all of the entitlements is hardly new information. Although the general public may not be aware of the shortfall, the consultants who write the EIR are experts and are aware.

Newhall expends much effort in an attempt to convince us that there will be sufficient water. The attempt misses the point. The EIR acknowledges

that water service for a buildout of the Santa Clarita Valley will depend to a large extent on SWP deliveries. But the EIR fails to undertake an adequate analysis of how much water the SWP can actually deliver in wet, average and dry years. Without such information, the general public and its responsible officials cannot make an informed decision on whether to approve the project. The County's approval of the West Creek EIR is not supported by substantial evidence.

[[II-IV]]*

Because the water services portion of the EIR is inadequate, the judgment is reversed. The trial court shall issue a writ of mandate vacating the certification of the EIR, shall retain jurisdiction until the county certifies an EIR complying with CEQA consistent with the views expressed in this opinion, and shall consider such orders it deems appropriate. (See § 21168.9 on trial court's power over EIR.) Costs on appeal are awarded to appellants.

Coffee, J., and Perren, J., concurred.

---

*See footnote, *ante*, page 715.