[No. C038844. Third Dist. Oct. 28, 2002.]

COMMUNITIES FOR A BETTER ENVIRONMENT et al., Plaintiffs and Appellants, v.
CALIFORNIA RESOURCES AGENCY, Defendant and Respondent;
CALIFORNIA BUILDING INDUSTRY ASSOCIATION, Intervener and Appellant.

**COUNSEL**

Anne E. Simon for Plaintiff and Appellant Communities For A Better Environment.

Law Offices of Sharon E. Duggan and Sharon E. Duggan for Plaintiff and Appellant Environmental Protection Information Center.

Shute, Mihaly & Weinberger, Ellison Folk and Marlena G. Byrne for Plaintiffs and Appellants Environmental Protection Information Center and Desert Citizens Against Pollution.

Adams Broadwell Joseph & Cardozo, Marc D. Joseph and Mark R. Wolfe for State Building & Construction Trades Council of California, AFL-CIO, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, Daniel L.

Siegel and Marian E. Moe, Deputy Attorneys General, for Defendant and Respondent.

Weston, Benshoof, Rochefort, Rubalcava & Maccuish, Steven W. Weston and Edward J. Casey for Intervener and Appellant.

Girard & Vinson, Christian M. Keiner and William F. Schuetz, Jr., for California County Superintendents' Educational Services Association as Amicus Curiae on behalf of Intervener and Appellant.

M. Reed Hopper and Robin L. Rivett for Pacific Legal Foundation as Amicus Curiae on behalf of Intervener and Appellant.

---

**OPINION**

**DAVIS, Acting P. J.**—The California Environmental Quality Act (CEQA) authorizes the Secretary of the California Resources Agency (Resources Agency) to adopt "Guidelines" to implement CEQA.[1] The Guidelines are published in title 14 of the California Code of Regulations.[2]

In 1998, the Resources Agency adopted significant revisions to the Guidelines.[3] Several of these revised Guidelines, as characterized by one treatise, "dealt with many of the stickiest, and most controversial, issues in CEQA jurisprudence."[4]

The present matter encompasses both an appeal and a cross-appeal.

In the appeal, we uphold the trial court's invalidation of the following Guidelines: section 15064, subdivision (h) (hereafter Guidelines section 15064(h)) (regulatory standards to determine significant environmental effect); sections 15064, subdivision (i)(4) (hereafter Guidelines section 15064(i)(4)) and 15130, subdivision (a)(4) (hereafter Guidelines section 15130(a)(4)) (how "de minimis" effects in a cumulatively impacted environment affect environmental impact report (EIR) preparation and discussion);

---

[1]Public Resources Code sections 21000 et seq., 21050, 21083, 21087. All further statutory references are to the Public Resources Code unless otherwise indicated. We will refer to the CEQA statutes in the format "CEQA section _____."

[2]California Code of Regulations, title 14, section 15000 et seq. We will refer to the CEQA Guidelines in the format "Guidelines section _____."

[3]CEQA section 21087, subdivision (a); see Remy et al., Guide to the California Environmental Quality Act (10th ed. 1999) page 11 and appendix VI, page 969 et seq. (hereafter Remy, CEQA Guide).

[4]Remy, CEQA Guide, *supra,* page 11; see also appendix VI, pages 969, 974.

Guidelines section 15130, subdivision (b)(1)(B)2 (hereafter Guidelines section 15130(b)(1)(B)2) (the definition of "probable future projects" for EIR discussion of cumulative impacts); Guidelines section 15152, subdivision (f)(3)(C) (hereafter Guidelines section 15152(f)(3)(C)) (whether significant environmental effects have been adequately addressed in a prior EIR, and their relationship to a statement of overriding considerations); and section 15378, subdivision (b)(5) (hereafter Guidelines section 15378(b)(5)) (organizational activities which are political or which are not physical changes are not "projects" for EIR purposes). We part company, though, with the trial court's invalidation of Guidelines section 15064, subdivision (i)(3) (hereafter Guidelines section 15064(i)(3)), so long as that section incorporates the fair argument trigger for EIR preparation (lead agency may determine no incremental cumulative effect if project meets cumulative mitigation plan's specific requirements).

In the cross-appeal, we uphold the trial court's validation of Guidelines section 15332 (categorical exemption for certain urban in-fill development projects). Accordingly, we affirm in part and reverse in part.

BACKGROUND

At issue in this case is whether the subject Guidelines, which public agencies must follow to implement CEQA, facially violate CEQA statutes and case law.[5] As such, the matter presents a concrete legal dispute ripe for our consideration. This matter stands in contrast to *Pacific Legal Foundation v. California Coastal Commission*, where the issues were not sufficiently concrete to allow judicial resolution in the absence of a specific factual context; there, the plaintiffs claimed essentially that administrative guidelines governing development dedications for beach access might in the future be applied contrary to statutory or constitutional law.[6]

The purpose of CEQA is to protect and maintain California's environmental quality.[7] With certain exceptions, CEQA requires public agencies to prepare an EIR for any project they intend to carry out or approve whenever it can be fairly argued on the basis of substantial evidence that the project may have a significant environmental effect; under this "fair argument" standard, an EIR must be prepared even if other substantial evidence shows

---

[5]See CEQA section 21083; see also Guidelines section 15000.

[6]*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167-174 [188 Cal.Rptr. 104, 655 P.2d 306].

[7]CEQA sections 21000, 21001.

no significant environmental effect.[8] " 'Significant effect on the environment' means a substantial, or potentially substantial, adverse change in the environment.'"[9] The EIR has been repeatedly recognized as the " 'heart of CEQA.' "[10]

CEQA requires that, before approving a project, the lead public agency find either that the project's significant environmental effects identified in the EIR have been avoided or mitigated, or that mitigations and alternatives identified in the EIR are infeasible and the unmitigated effects are outweighed by the project's benefits; if the public agency makes the latter finding, it must explain its reasoning in a statement of overriding considerations.[11] The EIR's purpose, then, " 'is to inform the public and its responsible officials of the environmental consequences of their decisions before they are made. Thus, the EIR "protects not only the environment but also informed self-government." [Citation.]' "[12]

Pursuant to a petition for writ of mandate and complaint for declaratory relief, three environmental organizations—Communities For A Better Environment, Environmental Protection Information Center, and Desert Citizens Against Pollution (hereafter collectively referred to as CBE)—sued the Resources Agency, challenging several 1998-revised Guidelines. The California Building Industry Association (BIA), a homebuilding trade association, was allowed to intervene in the action.

The trial court invalidated the following Guidelines sections: 15064(h), 15064(i)(4), 15130(a)(4), 15130(b)(1)(B)2, 15152(f)(3)(C), 15378(b)(5), 15064(i)(3), and 15152, subdivision (f)(2) (hereafter section 15152(f)(2)) to the extent it incorporates Guideline sections 15064(i)(3) and 15064(i)(4). The Resources Agency did not appeal this judgment, but the BIA did. Nevertheless, the Resources Agency attempted to file a respondent's brief requesting that Guidelines sections 15064(h), 15064(i)(3) and 15152(f)(2) (to the extent it incorporates 15064(i)(3)) be validated. We struck this

---

[8]CEQA sections 21100, 21151, 21080, subdivision (d), 21082.2, subdivision (a); *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502] (*Laurel Heights II*); *No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 75, 84 [118 Cal.Rptr. 34, 529 P.2d 66] (*No Oil*); *Friends of "B" Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 999, 1002 [165 Cal.Rptr. 514] (*Friends of "B" Street*); *Oro Fino Gold Mining Corp. v. County of El Dorado* (1990) 225 Cal.App.3d 872, 880 [274 Cal.Rptr. 720] (*Oro Fino*).

[9]CEQA section 21068.

[10]*Laurel Heights II, supra,* 6 Cal.4th at page 1123; accord, *Oro Fino, supra,* 225 Cal.App.3d at page 880.

[11]CEQA sections 21002, 21002.1, 21081; Guidelines sections 15091-15093; *Laurel Heights II, supra,* 6 Cal.4th at page 1124.

[12]*Laurel Heights II, supra,* 6 Cal.4th at page 1123, italics omitted.

brief as an improper attempt to appeal based on a respondent's brief. In a follow-up brief, the Resources Agency stated it has not taken any position on the validity of Guidelines sections 15064(i)(4), 15130(a)(4), 15130(b)(1)(B)2, 15152(f)(3)(C) and 15378(b)(5), because the Secretary of the Resources Agency is considering possible amendments to these sections.

The trial court upheld the validity of the following Guidelines sections: 15064.7, 15041, 15330, and 15332. CBE filed a cross-appeal, challenging only the trial court's judgment as to the validity of section 15332.

DISCUSSION

1. *Standard of Review*

■ Government Code section 11342.2 provides the general standard of review for determining the validity of administrative regulations.[13] That section states that "[w]henever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless [1] consistent and not in conflict with the statute and [2] reasonably necessary to effectuate the purpose of the statute."

Under the first prong of this standard, the judiciary independently reviews the administrative regulation for consistency with controlling law.[14] The question is whether the regulation alters or amends the governing statute or case law, or enlarges or impairs its scope. In short, the question is whether the regulation is within the scope of the authority conferred; if it is not, it is void.[15] This is a question particularly suited for the judiciary as the final

---

[13]*Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 757 [268 Cal.Rptr. 476] (*Henning*); *Physicians & Surgeons Laboratories, Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 982 [8 Cal.Rptr.2d 565] (*Physicians*).

[14]*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, and footnote 4 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*); *Henning, supra,* 219 Cal.App.3d at pages 757-758; *Physicians, supra,* 6 Cal.App.4th at page 982; *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1022 [50 Cal.Rptr.2d 892] (*Environmental Protection*).

[15]*Henning, supra,* 219 Cal.App.3d at page 758, citing *Ontario Community Foundation, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817 [201 Cal.Rptr. 165, 678 P.2d 378] (*Ontario*); *Yamaha, supra,* 19 Cal.4th at page 11 and footnote 4.

arbiter of the law, and does not invade the technical expertise of the agency.[16]

By contrast, the second prong of this standard, reasonable necessity, generally does implicate the agency's expertise; therefore, it receives a much more deferential standard of review.[17] The question is whether the agency's action was arbitrary, capricious, or without reasonable or rational basis.[18]

There is one wrinkle in the standard of review's first prong, and the BIA seeks to wrap itself within the crease. An administrative agency's view of its governing legal authority is entitled to great weight and will be followed unless it is clearly erroneous or unauthorized.[19] Our state Supreme Court has applied this principle to the Guidelines. The high court has stated that, regardless of whether the Guidelines are considered to be quasi-legislative regulatory mandates or merely interpretive aids, "[a]t a minimum, . . . courts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA."[20] From this, the BIA argues that the revised Guidelines are valid unless they are clearly unauthorized or erroneous, and therefore the standard of review is a deferential one. The BIA is mistaken. The "fly in this particular ointment," as one court has noted, rests with the word " 'unauthorized.' "[21] "[E]ven quasi-legislative rules are reviewed independently for consistency with controlling law"; if they are inconsistent, they are considered unauthorized.[22] This is because " ' " '[w]hatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' " ' "[23] An agency

---

[16]*Morris v. Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Henning, supra,* 219 Cal.App.3d at pages 757-758; *Pulaski v. Occupational Safety & Health Stds. Bd.* (1999) 75 Cal.App.4th 1315, 1332 [90 Cal.Rptr.2d 54].

[17]*Henning, supra,* 219 Cal.App.3d at page 758; *Physicians, supra,* 6 Cal.App.4th at page 982.

[18]*Yamaha, supra,* 19 Cal.4th at page 11; *Henning, supra,* 219 Cal.App.3d at page 758.

[19]*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].

[20]*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 391, footnote 2 [253 Cal.Rptr. 426, 764 P.2d 278] (*Laurel Heights I*).

[21]*Environmental Protection, supra,* 43 Cal.App.4th at page 1022; see *Yamaha, supra,* 19 Cal.4th at page 11, footnote 4.

[22]*Yamaha, supra,* 19 Cal.4th at page 11, footnote 4.

[23]*Ontario, supra,* 35 Cal.3d at page 816, quoted in *Henning, supra,* 219 Cal.App.3d at page 758; *Yamaha, supra,* 19 Cal.4th at page 11, footnote 4.

has no authority to promulgate a regulation that is inconsistent with controlling law.[24] In the end, "[t]he court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued."[25]

Finally, the "foremost principle" in interpreting CEQA is that the Legislature intended the act to be read so as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.[26]

### 2. Guidelines Section 15064(h)—Thresholds of Significance: Use of Regulatory Standards to Determine Significant Environmental Effect

As noted, several CEQA statutes specify that a lead public agency must prepare an EIR for any project the agency intends to carry out or approve which "may have a significant effect on the environment."[27] Thus, "[d]etermining whether a project may have a significant effect plays a critical role in the CEQA process."[28] Because of this "may have a significant effect" language and the EIR's place at the heart of the CEQA scheme, an EIR is required " 'whenever it can be *fairly argued* on the basis of substantial evidence that the project may have significant environmental impact,' " regardless of whether other substantial evidence supports the opposite conclusion.[29]

Guidelines section 15064 guides lead agencies in determining the significance of a project's environmental effects. Guidelines section 15064(h) provides for thresholds of significance to be based on regulatory standards that meet certain criteria. A "threshold of significance" for a given environmental effect is simply that level at which the lead agency finds the effects of the project to be significant; the term may be defined as a quantitative or qualitative standard, or set of criteria, pursuant to which the significance of

---

[24]*Ontario, supra,* 35 Cal.3d at page 816, cited in *Henning, supra,* 219 Cal.App.3d at pages 757-758; *Yamaha, supra,* 19 Cal.4th at page 11, footnote 4.

[25]*Yamaha, supra,* 19 Cal.4th at page 11, footnote 4, citing, inter alia, *Environmental Protection, supra,* 43 Cal.App.4th at page 1022.

[26]*Laurel Heights I, supra,* 47 Cal.3d at page 390; *Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 563-564 [276 Cal.Rptr. 410, 801 P.2d 1161]; *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].

[27]CEQA sections 21151, 21100, subdivision (a), 21080, subdivision (d), 21082.2, subdivision (a).

[28]Guidelines section 15064, subdivision (a).

[29]*Friends of "B" Street, supra,* 106 Cal.App.3d at page 1002, quoting *No Oil, supra,* 13 Cal.3d at page 75; accord, *Laurel Heights II, supra,* 6 Cal.4th at page 1123; *Sierra Club v. County of Sonoma* (1992) 6 Cal.App.4th 1307, 1316 [8 Cal.Rptr.2d 473].

a given environmental effect may be determined.[30] Adopting thresholds of significance promotes consistency, efficiency, and predictability in deciding whether to prepare an EIR.[31] According to the former general counsel of the Resources Agency who played a central role in preparing the 1998 revisions to the Guidelines, a vast body of regulatory standards has been adopted over the past few decades establishing levels at which impacts to a particular resource align with the definition of a significant effect on the environment.[32]

The trial court upheld the validity of Guidelines section 15064.7 on the use of thresholds of significance, and this ruling has not been challenged on appeal. Guidelines section 15064.7 specifies as relevant: "(a) Each public agency is encouraged to develop and publish thresholds of significance that the agency uses in the determination of the significance of environmental effects. A threshold of significance is an identifiable quantitative, qualitative or performance level of a particular environmental effect, non-compliance with which means the effect will normally be determined to be significant by the agency and compliance with which means the effect normally will be determined to be less than significant." The trial court upheld this Guideline, observing that "a lead agency's use of existing environmental standards in determining the significance of a project's environmental impacts is an effective means of promoting consistency in significance determinations and integrating CEQA environmental review activities with other environmental program planning and regulation." We agree.

But the trial court invalidated Guidelines section 15064(h) as contrary to the fair argument approach established in CEQA statutory and case law. We agree with the trial court here as well.

Guidelines section 15064(h) states:

"(1) (A) Except as otherwise required by [s]ection 15065 [mandatory findings of significance], a change in the environment is not a significant

[30]Thresholds of Significance: Criteria for Defining Environmental Significance (Sept. 1994) CEQA Technical Advice Series, reprinted in Bass et al., CEQA Deskbook (2d ed. 1999) appendix 10, page 393 et seq.; see *id.* at page 393 (hereafter Thresholds of Significance, reprinted in Bass, CEQA Deskbook, appendix 10).

[31]Thresholds of Significance, reprinted in Bass, CEQA Deskbook, appendix 10, *supra,* page 394.

[32]Gorsen, The New and Improved CEQA Guidelines Revisions: Important Guidance for Controversial Issues (Oct. 1998) reprinted in Remy, CEQA Guide, appendix VI, page 969 et seq.; see *id.* at page 970 (hereafter Gorsen, The New and Improved CEQA Guidelines Revisions, reprinted in Remy, CEQA Guide, appendix VI); see also Remy, CEQA Guide, *supra,* page 241, footnote 23; see also CEQA section 21068 (defining "significant effect on the environment").

112

effect if the change complies with a standard that meets the definition in [subdivision] (h)(3).

"(B) If there is a conflict between standards, the lead agency shall determine which standard is appropriate for purposes of this [subdivision] based upon substantial evidence in light of the whole record.

"(C) Notwithstanding [subdivision] (h)(1)(A), if the lead agency determines on the basis of substantial evidence in light of the whole record that a standard is inappropriate to determine the significance of an effect for a particular project, the lead agency shall determine whether the effect may be significant as otherwise required by this section, [s]ection 15065, and the Guidelines.

"(2) In the absence of a standard that satisfies [subdivision] (h)(1)(A), the lead agency shall determine whether the effect may be significant as otherwise required by this section, [s]ection 15065, and the Guidelines.

"(3) For the purposes of this [subdivision] a 'standard' means a standard of general application that is all of the following:

"(A) a quantitative, qualitative or performance requirement found in a statute, ordinance, resolution, rule, regulation, order, or other standard of general application;

"(B) adopted for the purpose of environmental protection;

"(C) adopted by a public agency through a public review process to implement, interpret, or make specific the law enforced or administered by the public agency;

"(D) one that governs the same environmental effect which the change in the environment is impacting; and,

"(E) one that governs within the jurisdiction where the project is located.

"(4) This definition includes thresholds of significance adopted by lead agencies which meet the requirements of this [subdivision]."

The trial court recognized the fair argument problem with Guidelines section 15064(h). If a proposed project has an environmental effect that complies with a subdivision (h)(3) regulatory standard, the lead agency is *directed* under subdivision (h)(1)(A) (and implicitly under subd. (h)(2)) to determine that the effect is not significant, regardless of whether other substantial evidence would support a fair argument that the effect may be

environmentally significant. This direction relieves the agency of a duty it would have under the fair argument approach to look at evidence beyond the regulatory standard, or in contravention of the standard, in deciding whether an EIR must be prepared. Under the fair argument approach, *any* substantial evidence supporting a fair argument that a project may have a significant environmental effect would trigger the preparation of an EIR. A well-known CEQA treatise recognized this dilemma as well, stating: "[S]ubdivision (h) . . . appears to dispense with the traditional 'fair argument' standard otherwise applicable to the decision whether to prepare a[n] . . . EIR. . . . Notably, where existing regulatory standards, as defined, address a particular category of impact, the lead agency need not treat the impact as potentially significant whenever *any* substantial evidence in the record supports such a conclusion."[33]

Admittedly, Guidelines section 15064(h) contains some wiggle room regarding the regulatory standard approach. Subdivision (h)(1)(B) states that if there is a conflict between standards, the lead agency shall determine which standard is appropriate. More importantly for our purposes, under subdivision (h)(1)(C), a lead agency may determine on the basis of substantial evidence in light of the whole record that a standard is inappropriate to determine the significance of an effect for a particular project; if this happens, the lead agency is to determine whether the effect may be significant as otherwise required. However, as one CEQA treatise observes with respect to these two subdivisions: "[A] lead agency . . . decide[s] for itself whether or not to use a particular standard; it cannot be forced into such a decision simply because project opponents or skeptics can point to substantial evidence indicating that reliance on the standard is inappropriate or ineffective."[34] In other words, the fair argument approach is repudiated once again. In fact, subdivision (h)(1)(C) and (h)(2) unwittingly sow the seeds of Guidelines section 15064(h)'s demise by recognizing that if the lead agency determines the regulatory standard is inappropriate to determine significant effect, or if there is no applicable regulatory standard, the agency is to determine whether the effect may be significant "as otherwise required" (i.e., by using the fair argument approach).[35]

The BIA argues that the fair argument test is limited to one aspect of the CEQA review process (the decision whether to prepare an EIR), with all other aspects of the process being governed by the substantial evidence test. The BIA maintains that since the fair argument test does not apply to the

[33]Remy, CEQA Guide, *supra,* page 174.
[34]Remy, CEQA Guide, *supra,* page 175.
[35]See Guidelines section 15064, subdivision (f) (incorporating the fair argument standard).

establishment of significance standards or thresholds, Guidelines section 15064(h) properly employs the substantial evidence test when addressing the local agency's decision to rely on a regulatory standard as a CEQA significance threshold. The problem with this argument is that it focuses on the *establishment* of a regulatory standard as a threshold of significance; it ignores the real issue here—the *application* of an established regulatory standard in a way that forecloses the consideration of any other substantial evidence showing there may be a significant effect.

We conclude that Guidelines section 15064(h) is inconsistent with controlling CEQA law governing the fair argument approach, and therefore is invalid.

3. *Guidelines Section 15064(i)(3)—Cumulative Impacts: Incremental Cumulative Effect and Cumulative Mitigation Plan*

■ In addition to evaluating a project's direct and indirect environmental effects, a lead agency must also assess whether a cumulative effect requires an EIR.[36] This requirement flows from CEQA section 21083. That section requires a finding that a project may have a significant effect on the environment if "[t]he possible effects of a project are individually limited but cumulatively considerable. . . . '[C]umulatively considerable' means that the incremental effects of an individual project are considerable when viewed in connection with the effects of past projects, the effects of other current projects, and the effects of probable future projects."[37]

Cumulative impact analysis is necessary because the full environmental impact of a proposed project cannot be gauged in a vacuum.[38] One of the most important environmental lessons that has been learned is that environmental damage often occurs incrementally from a variety of small sources. These sources appear insignificant when considered individually, but assume threatening dimensions when considered collectively with other sources with which they interact.[39] Although the assessment of cumulative effects plays an important part in the CEQA review process, this requirement has proven to be a source of considerable confusion.[40]

In assessing whether a cumulative effect requires an EIR, Guidelines section 15064(i)(3) states that "A lead agency may determine that a project's

---

[36]CEQA section 21083, subdivision (b); Guidelines section 15064, subdivision (i)(1); Remy, CEQA Guide, *supra,* page 240.
[37]CEQA section 21083, subdivision (b).
[38]*Whitman v. Board of Supervisors* (1979) 88 Cal.App.3d 397, 408 [151 Cal.Rptr. 866].
[39]*Los Angeles Unified School Dist. v. City of Los Angeles* (1997) 58 Cal.App.4th 1019, 1025 [68 Cal.Rptr.2d 367] (*Los Angeles Unified*).
[40]See Remy, CEQA Guide, *supra,* page 240.

incremental contribution to a cumulative effect is not cumulatively considerable if the project will comply with the requirements in a previously approved plan or mitigation program which provides specific requirements that will avoid or substantially lessen the cumulative problem (e.g., water quality control plan, air quality plan, integrated waste management plan) within the geographic area in which the project is located. Such plans or programs must be specified in law or adopted by the public agency with jurisdiction over the affected resources through a public review process to implement, interpret, or make specific the law enforced or administered by the public agency."

We conclude this Guideline is consistent with controlling CEQA law, so long as it is read to incorporate the fair argument standard for EIR preparation.

This section stands in contrast to Guidelines section 15064(h), which we just repudiated. Guidelines section 15064(h) *directed* the lead agency to determine that a project's environmental effect was not significant if the effect complied with a standard meeting certain criteria, regardless of whether it could be fairly argued on the basis of other substantial evidence that the project could still have a significant environmental effect. Guidelines section 15064(i)(3), in contrast, states that a lead agency *may determine* that a project's incremental contribution to a cumulative effect is not cumulatively considerable if it complies with a standard meeting certain criteria. Guidelines section 15064(i)(3) does not direct the lead agency to focus only on the standard to the exclusion of other substantial evidence from which it can be fairly argued that an EIR is still required. In this way, Guidelines section 15064(i)(3) is more akin to the validated Guidelines section 15064.7 (encouraging the use of thresholds of significance) than it is to the invalidated Guidelines section 15064(h).

The argument against Guidelines section 15064(i)(3)'s validity is that the section impermissibly allows an agency to find a cumulative effect insignificant based on a project's compliance with some generalized plan rather than on the project's actual environmental impacts. That is, even if substantial evidence shows that a project's cumulative impact may be cumulatively considerable and therefore significant, the lead agency may nevertheless deem the impact insignificant, and forego an EIR, simply because the impact complies with a plan or mitigation program. By incorporating the fair argument approach into Guidelines section 15064(i)(3)'s receptive "may determine" language, however, this argument loses its punch. If there is substantial evidence that the possible effects of a particular project are still

cumulatively considerable notwithstanding that the project complies with the specified plan or mitigation program addressing the cumulative problem, an EIR must be prepared for the project.

The trial court found that Guidelines section 15064(i)(3) contravenes CEQA case law which holds that a project can have significant cumulative impacts even though the project complies with thresholds of significance in an approved plan or mitigation program.[41] There is no contravention, however, if Guidelines section 15064(i)(3) incorporates the fair argument standard; rather, the principle enunciated in these cases provides the legal basis for a fair argument that a project has significant cumulative impacts notwithstanding that it complies with an approved plan or mitigation program.

We conclude that Guidelines section 15064(i)(3) is consistent with controlling CEQA law so long as the section is deemed to incorporate the fair argument standard in triggering EIR preparation. Guidelines section 15152(f)(2), which involves EIR tiering, incorporates Guidelines section 15064, subdivision (i). The trial court invalidated section 15152(f)(2) to the extent it incorporates Guidelines section 15064(i)(3). Section 15152(f)(2)'s incorporation of section 15064(i)(3) is permissible in light of our validation of section 15064(i)(3).

4. *Guidelines Sections 15064(i)(4) and 15130(a)(4)—Cumulative Impacts: De Minimis Incremental Contributions to Cumulative Impacts; Guidelines Section 15152(f)(2)'s Incorporation of Section 15064(i)(4)*

Guidelines sections 15064(i)(4) and 15130(a)(4) involve the subject of cumulative impacts in the EIR process. As noted, CEQA section 21083 governs this subject; that section requires a finding that a project may have a significant effect on the environment if the project's "possible effects . . . are individually limited but cumulatively considerable. . . . '[C]umulatively considerable' means that the incremental effects of an individual project are considerable when viewed in connection with the effects of past projects, the effects of other current projects, and the effects of probable future projects."[42]

The Guidelines define "cumulative impacts" as referring to "two or more individual effects which, when considered together, are considerable or which compound or increase other environmental impacts. [¶] . . . [¶] . . .

---

[41]See *City of Antioch v. City Council* (1986) 187 Cal.App.3d 1325, 1332-1338 [232 Cal.Rptr. 507]; see also *Kings County Farm Bureau v. City of Hanford* (1990) 221 Cal.App.3d 692, 716-717 [270 Cal.Rptr. 650] (*Kings County*).

[42]CEQA section 21083, subdivision (b).

The cumulative impact from several projects is the change in the environment which results from the incremental impact of the project when added to other closely related past, present, and reasonably foreseeable probable future projects. Cumulative impacts can result from individually minor but collectively significant projects taking place over a period of time."[43]

Guidelines section 15064(i)(4) governs whether a cumulative effect requires an EIR to be prepared. It states: "A lead agency may determine that the incremental impacts of a project are not cumulatively considerable when they are so small that they make only a de minimis contribution to a significant cumulative impact caused by other projects that would exist in the absence of the proposed project. Such de minim[i]s incremental impacts, by themselves, do not trigger the obligation to prepare an EIR. A de minim[i]s contribution means that the environmental conditions would essentially be the same whether or not the proposed project is implemented."

Guidelines section 15130(a)(4) governs an EIR's discussion of cumulative impacts. It states: "(a) An EIR shall discuss cumulative impacts of a project when the project's incremental effect is cumulatively considerable . . . . Where a lead agency is examining a project with an incremental effect that is not 'cumulatively considerable,' a lead agency need not consider that effect significant, but shall briefly describe its basis for concluding that the incremental effect is not cumulatively considerable. [¶] . . . [¶] (4) An EIR may determine that a project's contribution to a significant cumulative impact is de minim[i]s and thus is not significant. A de minim[i]s contribution means that the environmental conditions would essentially be the same whether or not the proposed project is implemented."

While these two Guidelines appear reasonable on their face, they contravene the very concept of cumulative impacts. Their application would turn cumulative impact analysis on its head by diminishing the need to do a cumulative impact analysis as the cumulative impact problem worsens. The reason for this incongruity is that the de minimis approach of Guidelines sections 15064(i)(4) and 15130(a)(4) compares the incremental effect of the proposed project against the collective cumulative impact of all relevant projects. This comparative approach is contrary to CEQA section 21083 and to the Guidelines section 15355 definition of cumulative impacts, set forth above; this approach also contravenes CEQA case law.

---

[43]Guidelines section 15355.

The seminal decision is *Kings County*.[44] There the court concluded that an EIR inadequately considered an air pollution (ozone) cumulative impact. The court said: "The []EIR concludes the project's contributions to ozone levels in the area would be immeasurable and, therefore, insignificant because the [cogeneration] plant would emit relatively minor amounts of [ozone] precursors compared to the total volume of [ozone] precursors emitted in Kings County. The EIR's analysis uses the magnitude of the current ozone problem in the air basin in order to trivialize the project's impact."[45] The court concluded: "The relevant question to be addressed in the EIR is not the relative amount of precursors emitted by the project when compared with preexisting emissions, but whether any additional amount of precursor emissions should be considered significant in light of the serious nature of the ozone problems in this air basin."[46]

*Los Angeles Unified* followed the *Kings County* approach. It found an EIR inadequate for concluding that a project's additional increase in noise level of another 2.8 to 3.3 dBA was insignificant given that the existing noise level of 72 dBA already exceeded the regulatory recommended maximum of 70 dBA.[47] The court concluded that this "ratio theory" trivialized the project's noise impact by focusing on individual inputs rather than their collective significance.[48] The relevant issue was not the relative amount of traffic noise resulting from the project when compared to existing traffic noise, but whether any additional amount of traffic noise should be considered significant given the nature of the existing traffic noise problem.[49]

From *Kings County* and *Los Angeles Unified*, the guiding criterion on the subject of cumulative impact is whether any additional effect caused by the proposed project should be considered significant given the existing cumulative effect.

In adopting Guidelines sections 15064(i)(4) and 15130(a)(4), the Resources Agency relied on language appearing in *San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus*, in which the court quoted from a CEQA treatise.[50] This language distinguished between the "cumulative impacts" analysis required in an EIR and the question of whether a project's

---

[44]*Kings County, supra,* 221 Cal.App.3d at page 718.
[45]*Kings County, supra,* 221 Cal.App.3d at page 718.
[46]*Kings County, supra,* 221 Cal.App.3d at page 718.
[47]*Los Angeles Unified, supra,* 58 Cal.App.4th at pages 1024-1026.
[48]*Los Angeles Unified, supra,* 58 Cal.App.4th at page 1025.
[49]*Los Angeles Unified, supra,* 58 Cal.App.4th at page 1025.
[50]Gorsen, The New and Improved CEQA Guidelines Revisions, reprinted in Remy, CEQA Guide, appendix VI, *supra,* pages 970-971 and footnote 12; *San Joaquin Raptor/Wildlife*

impacts are "cumulatively considerable" for purposes of determining whether an EIR must be prepared at all. If the two are treated as equivalent, said the language in *San Joaquin Raptor*, " 'any contribution by a project, however small, to environmental conditions that are cumulatively adverse requires a finding that the project may have a significant cumulative impact. The problem with this view is that it would make the need for an EIR turn on the impacts of other projects, not on the impacts of the project under review. [¶] . . . [¶] . . . [An] agency [must] consider[] the effects of other projects, but only as a context for considering whether the incremental effects of the project at issue are considerable. In other words, the agency determines whether the incremental impacts of the project are "cumulatively considerable" by evaluating them against the backdrop of the environmental effects of other projects. *The question is not whether there is a "significant cumulative impact" but whether the effects of the "individual project are considerable." ' "*[51]

In our view, this passage from *San Joaquin Raptor* takes a step down the road of the "ratio theory/comparative approach" that was repudiated in *Kings County* and *Los Angeles Unified.* The passage's premise—a premise relied on by the Resources Agency regarding Guidelines sections 15064(i)(4) and 15130(a)(4)—is that the need for an EIR turns on the impacts of the project under review, not on the impacts of other past, present, or future projects.[52]

However, under CEQA section 21083, under the Guidelines section 15355 definition of cumulative impacts, and under the *Kings County/Los Angeles Unified* approach, the need for an EIR turns on the impacts of *both* the project under review and the relevant past, present and future projects. Under CEQA section 21083, an EIR is required if the "possible effects of a project are individually limited but cumulatively considerable"; the incremental effects of an individual project are to be "viewed *in connection with* the effects of" past, current and probable future projects.[53] Guidelines section 15355 defines "cumulative impacts" as referring "to two or more individual effects which, *when considered together*, are considerable or which compound or increase other environmental impacts" (italics added); and states that the "cumulative impact from several projects is the change in the environment which results from the incremental impact of the project

*Rescue Center v. County of Stanislaus* (1996) 42 Cal.App.4th 608, 623-624 [49 Cal.Rptr.2d 494] (*San Joaquin Raptor*).

[51]*San Joaquin Raptor, supra,* 42 Cal.App.4th at pages 623-624.

[52]Gorsen, The New and Improved CEQA Guidelines Revisions, reprinted in Remy, CEQA Guide, appendix VI, *supra,* page 971; *San Joaquin Raptor, supra,* 42 Cal.App.4th at page 623.

[53]CEQA section 21083, subdivision (b), italics added.

*when added to* other closely related past, present, and reasonably foreseeable probable future projects. Cumulative impacts can result from *individually minor but collectively significant projects* taking place over a period of time" (italics added). And "the relevant question" under the *Kings County/Los Angeles Unified* approach is not how the effect of the project at issue compares to the preexisting cumulative effect, but whether "any additional amount" of effect should be considered significant in the context of the existing cumulative effect.[54] This does not mean, however, that *any* additional effect in a nonattainment area for that effect *necessarily* creates a significant cumulative impact; the "one [additional] molecule rule" is not the law.[55] Moreover, the basic approach set forth in Guidelines section 15064, subdivision (i)(1) seems sound—that is, in assessing whether a cumulative effect requires an EIR, the lead agency shall consider whether the cumulative impact is significant and whether the proposed project's incremental effects are cumulatively considerable.

In the end, the greater the existing environmental problems are, the lower the threshold should be for treating a project's contribution to cumulative impacts as significant.[56] But the language quoted in *San Joaquin Raptor* runs counter to this concept and puts the cart before the horse. This is because that language would effectively adopt a higher threshold "comparative approach" for deciding whether to prepare an EIR, and a lower threshold "combined approach" for governing a cumulative impact discussion in an EIR.

■ Furthermore, the distinction drawn in the *San Joaquin Raptor* passage between EIR preparation and EIR discussion regarding cumulative impacts finds little support in CEQA law. Case law states that "[w]hile [CEQA] section 21083 governs the situations in which an agency must prepare an EIR, its provisions have also been applied to the contents of an EIR once it is determined an EIR must be prepared."[57] Echoing this theme, the discussion following Guidelines section 15065 on mandatory findings of significance states that "[t]hese mandatory findings [which include the 'cumulatively considerable' finding from CEQA section 21083] control not only the decision of whether to prepare an EIR but also the identification of

---

[54]*Kings County, supra,* 221 Cal.App.3d at page 718; accord, *Los Angeles Unified, supra,* 58 Cal.App.4th at page 1025; see also *Environmental Protection Information Center, Inc. v. Johnson* (1985) 170 Cal.App.3d 604, 624-625 [216 Cal.Rptr. 502].

[55]See Remy, CEQA Guide, *supra,* pages 476-478.

[56]See Remy, CEQA Guide, *supra,* page 475.

[57]*Los Angeles Unified, supra,* 58 Cal.App.4th at page 1024, footnote 6, citing *Laurel Heights I, supra,* 47 Cal.3d at page 394.

effects to be analyzed in depth in the EIR . . . ."[58] Finally, the discussion following Guidelines section 15355 remarks that "[the] definition of the term 'cumulative impacts' is provided because the term is related to one of the mandatory findings of significant effect required by [CEQA] [s]ection 21083. A common understanding of the term is needed in order to implement the section."[59]

 We conclude that Guidelines sections 15064(i)(4) and 15130(a)(4) are inconsistent with controlling CEQA law because they measure a proposed project's de minimis incremental impact relative to the existing cumulative impact, rather than focus on the combined effects of these impacts. A question arises as to whether these two sections can be saved by construing the de minimis effect in *absolute* rather than relative terms. We think not. Focusing on the de minimis effect in absolute terms isolates the effect individually, and this runs counter to the combined approach that CEQA cumulative impact law requires. Moreover, a de minimis effect in absolute terms would be akin to no environmental effect; the Guidelines already cover that concept, so Guidelines sections 15064(i)(4) and 15130(a)(4) would be unnecessary in this realm. Guidelines section 15130, subdivision (a)(1) states that "[a]n EIR should not discuss impacts which do not result in part from the project evaluated in the EIR." And Guidelines section 15064, subdivision (i)(5) adds that the "mere existence of significant cumulative impacts caused by other projects alone shall not constitute substantial evidence that the proposed project's incremental effects are cumulatively considerable."

Guidelines section 15152(f)(2) governs the assessment of whether there is a new significant cumulative effect in a tiered EIR process ("tiering" refers to incorporating the analysis from a general, broader EIR into a later, narrower EIR).[60] Guidelines section 15152(f)(2) states, in part, that "[a]t this point, the question is not whether there is a significant cumulative impact, but whether the effects of the project are cumulatively considerable. For a discussion on how to assess whether project impacts are cumulatively considerable, see [Guidelines] [s]ection 15064(i)." We agree with the trial court that to the extent that Guidelines section 15152(f)(2) incorporates Guidelines section 15064(i)(4), it is invalid to that extent.

5. *Guidelines Section 15130(b)(1)(B)2—Cumulative Impacts: Defining "Probable Future Projects" for Cumulative Impact Purposes*

 This section defines "probable future projects," a term used in CEQA section 21083 on the subject of cumulative impacts. Under CEQA

---

[58]Remy, CEQA Guide, *supra*, appendix V, page 879.
[59]Remy, CEQA Guide, *supra,* appendix V, page 933.
[60]Guidelines section 15152, subdivision (a).

section 21083, an individual project's incremental effect must be viewed in combination with the effects of relevant past, present, and probable future projects to determine whether the individual effect is cumulatively considerable.[61]

Guidelines section 15130(b)(1)(B)2 states: " 'Probable future projects' may be limited to those projects requiring an agency approval for an application which has been received at the time the notice of preparation is released, unless abandoned by the applicant; projects included in an adopted capital improvements program, general plan, regional transportation plan, or other similar plan; projects included in a summary of projections of projects (or development areas designated) in a general plan or a similar plan; projects anticipated as later phase of a previously approved project (e.g. a subdivision); *or* those public agency projects for which money has been budgeted." (Italics added.)

The categories of probable future projects set forth in Guidelines section 15130(b)(1)(B)2 are drawn from controlling CEQA law.[62] However, as the trial court found, to the extent this section lists these categories *disjunctively* and a lead agency may refer to only one of the categories in analyzing cumulative impacts, the section is inconsistent with CEQA law and is invalid.

6. *Guidelines Section 15152(f)(3)(C)—Tiering: When Significant Environmental Effects Have Been Adequately Addressed for EIR Tiering Purposes*

■ Guidelines section 15152(f)(3)(C) involves the subject of "tiering." As defined by CEQA section 21068.5, "tiering" means "the coverage of general matters and environmental effects in an [EIR] prepared for a policy, plan, program or ordinance followed by narrower or site-specific [EIR's] which incorporate . . . the discussion in any prior [EIR] and which concentrate on the environmental effects which (a) are capable of being mitigated, or (b) were not analyzed as significant effects on the environment in the prior [EIR]."

On the concept of tiering, CEQA section 21094, subdivision (a) adds as relevant: "Where a prior [EIR] has been prepared and certified for a program, plan, policy, or ordinance, the lead agency for a later project that

---

[61]See also Guidelines section 15355.

[62]See, e.g., *San Franciscans for Reasonable Growth v. City and County of San Francisco* (1984) 151 Cal.App.3d 61, 72-77 [198 Cal.Rptr. 634].

meets the requirements of this section shall examine significant effects of the later project upon the environment by using a tiered [EIR], except that the report on the later project need not examine those effects which the lead agency determines were either (1) mitigated or avoided . . . as a result of the prior [EIR], or (2) examined at a sufficient level of detail in the prior [EIR] to enable those effects to be mitigated or avoided by site specific revisions, the imposition of conditions, or by other means in connection with the approval of the later project."

Guidelines section 15152, subdivision (f)(3), including subdivision (f)(3)(C) at issue here, states as relevant:

"(f) A later EIR shall be required when the [pre-EIR] initial study or other analysis finds that the later project may cause significant effects on the environment that were not adequately addressed in the prior EIR. . . . [¶] . . . [¶]

"(3) Significant environmental effects have been 'adequately addressed' if the lead agency determines that:

"(A) they have been mitigated or avoided as a result of the prior [EIR] . . . ;

"(B) they have been examined at a sufficient level of detail in the prior [EIR] to enable those effects to be mitigated or avoided by site[-]specific revisions, the imposition of conditions, or by other means in connection with the approval of the later project; or

"(C) they cannot be mitigated to avoid or substantially lessen the significant impacts despite the project proponent's willingness to accept all feasible mitigation measures, and the only purpose of including analysis of such effects in another [EIR] would be to put the agency in a position to adopt a statement of overriding considerations with respect to the effects."

Guidelines section 15152, subdivision (f)(3)(A) and (B), as just quoted, reiterates the two exceptions set forth in CEQA section 21094, subdivision (a); those two exceptions specify the circumstances under which a later EIR need not examine the effects of a later project because those effects have been the subject of a prior EIR. Subdivision (f)(3)(C) of Guidelines section 15152 is not based on a similar statutory exception, prompting CBE's argument that this subdivision has no legal basis and is invalid because it does not explicitly require that an earlier EIR have actually addressed the impacts of the later project.

Subdivision (f)(3)(C) of Guidelines section 15152 is phrased somewhat awkwardly; it would be clearer if it was prefaced, as is subdivision (f)(3)(B), with a statement that the significant environmental effects "have been examined at a sufficient level of detail in the prior [EIR]" (and they cannot be mitigated, etc.). With this clarification, the concept underlying subdivision (f)(3)(C) appears to fall within the fundamental concept of tiering—a prior EIR has adequately addressed the environmental effects of a later project such that further *analysis* of those effects in the later EIR would be "duplicative."[63] As one commentator has remarked regarding subdivision (f)(3)(C), the Resources Agency apparently reasoned that limited societal resources are not well expended in preparing later EIR's, when those EIR's almost certainly would not result in any additional mitigation or other enhanced environmental protection.[64]

Even assuming, however, that Guidelines section 15152(f)(3)(C) incorporates the fundamental concept of tiering, it suffers from another fundamental problem. The section appears to allow an agency, in approving a later project that has significant unavoidable impacts, to forego making a statement of overriding considerations *specifically tied to that project*. This is contrary to CEQA law. CEQA section 21094, subdivision (d) requires agencies that approve a later project to comply with CEQA section 21081. Under CEQA section 21081, an agency approving a project with significant environmental effects must find that each effect will be mitigated or avoided, or "that *specific* overriding economic, legal, social, technological, or other benefits of *the project* outweigh the . . . effect[] . . . ."[65] The requirement of a statement of overriding considerations is central to CEQA's role as a public accountability statute; it requires public officials, in approving environmentally detrimental projects, to justify their decisions based on counterbalancing social, economic or other benefits, and to point to substantial evidence in support.[66] Under Guidelines section 15152(f)(3)(C), however, an agency apparently could adopt one statement of overriding considerations for a prior, more general EIR, and then avoid future political accountability by approving later, more specific projects with significant unavoidable impacts pursuant to the prior EIR and statement of overriding considerations. Even though a prior EIR's *analysis* of environmental effects may be subject to being incorporated in a later EIR for a later, more specific project, the

[63]CEQA section 21093, subdivision (a).

[64]Remy, CEQA Guide, *supra,* page 491.

[65]CEQA section 21081, subdivision (b); see also *Laurel Heights II, supra,* 6 Cal.4th at page 1124.

[66]See *City of Carmel-by-the-Sea v. Board of Supervisors* (1977) 71 Cal.App.3d 84, 94-96 [139 Cal.Rptr. 214]; *Village Laguna of Laguna Beach, Inc. v. Board of Supervisors* (1982) 134 Cal.App.3d 1022, 1032-1035 [185 Cal.Rptr. 41].

responsible public officials must still go on the record and explain specifically why they are approving the later project despite *its* significant unavoidable impacts.

We conclude that Guidelines section 15152(f)(3)(C) is inconsistent with controlling CEQA law and is therefore invalid.

*7. Guidelines Section 15378(b)(5)—Definition of Project: Organizational Activities Which Are Political or Not Physical Changes Excluded from Definition of "Project"*

As noted, with certain exceptions, CEQA requires public agencies to prepare an EIR for any "project" they intend to carry out or approve which may have a significant effect on the environment.[67] Under CEQA section 21065, " '[p]roject' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . ."

Guidelines section 15378(b)(5) excludes from the definition of "project" the following: "Organizational or administrative activities of governments which are political or which are not physical changes in the environment (such as the reorganization of a school district or detachment of park land)."

There are two problems with this Guideline, one grammatical and one substantive.

The grammatical problem is with the use of the disjunctive "or." Under that disjunctive, governmental political activities of an organizational or administrative nature are excluded from the definition of "project" for CEQA purposes. This blanket exclusion cuts too broad a swath; in an Alice-in-Wonderland kind of way, it could arguably be stretched to encompass the very approval of a project. Even the proponent of this Guideline recognizes the impermissibly broad nature of this measure, noting that "[i]n order to qualify as exempt under [it], the organizational or administrative activities must be both political *and* . . . not result in physical changes to the environment." (Italics in original.)

The substantive problem concerns the language "which are not physical changes in the environment." Under the relevant CEQA statute, section 21065, a CEQA "project" encompasses an activity "which may *cause either*

---

[67]*Laurel Heights II, supra,* 6 Cal.4th at page 1123; *Oro Fino, supra,* 225 Cal.App.3d at page 880.

a direct physical change in the environment, *or* a reasonably foreseeable indirect physical change in the environment . . . ." (Italics added.) But Guidelines section 15378(b)(5) flatly exempts from CEQA those qualifying activities "which are not physical changes in the environment," even if those activities may *cause* physical changes in the environment. Guidelines section 15378(b)(5) encompasses only activities "which are not physical changes"; the section does not say, activities which *do not cause or result* in direct or indirect physical changes. This has significance because purely administrative or organizational activities of government, on their own, are seldom physical changes in the environment, but may lead to such changes.[68]

Even if Guidelines section 15378(b)(5)'s language concerning activities "which are not physical changes in the environment" extends to activities which do not cause physical changes in the environment, the Guideline is still troublesome. As the trial court noted, various political boundary changes and governmental organizational activities have been found to cause direct or indirect physical changes to the environment.[69] Governmental organizational activities, such as annexation approvals and school district reorganizations, which constitute an essential step culminating in environmental effect are "projects" within the scope of CEQA.[70] Guidelines section 15378(b)(5)'s blanket exclusion of political organizational activities from the definition of project is thus contrary to the statutory definition of "project" and its application in case law.

We conclude that Guidelines section 15378(b)(5) is inconsistent with controlling CEQA law and is therefore invalid.

8. *Guidelines Section 15332—Categorical Exemption: In-fill Development Projects*

■ CEQA section 21084 authorizes the Resources Agency to adopt Guidelines that list classes of projects exempt from CEQA provided the agency finds "that the listed classes . . . do not have a significant effect on

---

[68]See *Fullerton Joint Union High School Dist. v. State Bd. of Education* (1982) 32 Cal.3d 779, 796-797 [187 Cal.Rptr. 398, 654 P.2d 168] (*Fullerton*); *Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277-281 [118 Cal.Rptr. 249, 529 P.2d 1017] (*Bozung*); *People ex rel. Younger v. Local Agency Formation Com.* (1978) 81 Cal.App.3d 464, 478-479 [146 Cal.Rptr. 400] (*Younger*).

[69]See *Fullerton, supra,* 32 Cal.3d at pages 796-797; *Bozung, supra,* 13 Cal.3d at pages 277-281; *Younger, supra,* 81 Cal.App.3d at pages 478-479.

[70]*Fullerton, supra,* 32 Cal.3d at pages 796-797; *Bozung, supra,* 13 Cal.3d at pages 277-281; *Younger, supra,* 81 Cal.App.3d at pages 478-479.

the environment."[71] These classes of projects are known as "categorical exemptions" and appear in Guidelines section 15300 et seq.[72]

The Resources Agency's authority to identify classes of projects exempt from CEQA is not unfettered.[73] As stated in *Wildlife Alive v. Chickering*, an early high court decision construing CEQA section 21084, the Resources Agency "is empowered to exempt only those activities which do not have a significant effect on the environment. [Citation.] It follows that where there is any reasonable possibility that a project or activity may have a significant effect on the environment, an exemption would be improper."[74] This admonition from *Chickering* cannot be read so broadly as to defeat the very idea underlying CEQA section 21084 of *classes* or *categories* of projects that do not have a significant environmental effect. So subsequent case law has stated that "[t]o implement th[is] rule laid out in *Chickering*, Guidelines section 15300.2, subdivision (c), was adopted, which provides: 'Significant Effect. A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances.' "[75]

Thus, a categorical exemption authorized by CEQA section 21084 is an exemption from CEQA for a *class* of projects that the Resources Agency determines will *generally* not have a significant effect on the environment.[76]

Guidelines section 15332 provides:

"Class 32 consists of projects characterized as in-fill development meeting the conditions described in this section.

"(a) The project is consistent with the applicable general plan designation and all applicable general plan policies as well as with applicable zoning designation and regulations.

---

[71]CEQA section 21084, subdivision (a).

[72]*Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1191 [61 Cal.Rptr.2d 447] (*Azusa*).

[73]*Azusa, supra,* 52 Cal.App.4th at page 1191.

[74]*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 205-206 [132 Cal.Rptr. 377, 553 P.2d 537] (*Chickering*); see also *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 124-125 [65 Cal.Rptr.2d 580, 939 P.2d 1280] (*Mountain Lion*).

[75]*Azusa, supra,* 52 Cal.App.4th at page 1191; accord, *Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243, 1251-1252 [89 Cal.Rptr.2d 233]; see *Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 115 [62 Cal.Rptr.2d 612] (*Davidon Homes*).

[76]See *Azusa, supra,* 52 Cal.App.4th at page 1206; see also *Davidon Homes, supra,* 54 Cal.App.4th at pages 115-116; Thresholds of Significance, reprinted in Bass, CEQA Deskbook, appendix 10, *supra,* pages 28, 30; Remy, CEQA Guide, *supra,* page 105.

"(b) The proposed development occurs within city limits on a project site of no more than five acres substantially surrounded by urban uses.

"(c) The project site has no value, as habitat for endangered, rare or threatened species.

"(d) Approval of the project would not result in any significant effects relating to traffic, noise, air quality, or water quality.

"(e) The site can be adequately served by all required utilities and public services."

In reading Guidelines section 15332, we cannot dispute the Resources Agency's finding that this class of projects generally will not have a significant effect on the environment; that is, we do not see an inconsistency between Guidelines section 15332 and CEQA section 21084's requirement that any *class* of projects listed in the Guidelines as a categorical exemption must not have a significant effect on the environment. Guidelines section 15332 is limited to in-fill urban development, and subdivisions (a) through (e) specify, as the trial court found, "comprehensive environmentally protective conditions."

CBE counters with a series of arguments. CBE notes that Guidelines section 15332 applies to any type of in-fill urban project, ranging from industrial facilities to residential developments, and is broader than most categorical exemptions. CBE provides examples of diverse, under-five-acre urban projects with significant environmental impact, such as highway drill sites and electrical generation plants. However, all projects within Guidelines section 15332's scope have to comply with all applicable general plan designations and policies and all applicable zoning designations and regulations in addition to the other Guidelines section 15332 protective criteria.

In a related vein, CBE observes that the Legislature has already provided statutory exemptions in the CEQA scheme for certain narrow classes of in-fill projects; thus, Guidelines section 15332 runs counter to legislative intent. However, statutory exemptions have an absolute quality not shared by categorical exemptions: a project that falls within a statutory exemption is not subject to CEQA even if it has the potential to significantly affect the

environment.[77] Moreover, the Legislature has authorized the adoption of categorical exemptions notwithstanding statutory ones.[78]

CBE maintains that the section 15332 phrase "substantially surrounded by urban uses" could lead to piecemeal expansion of urban areas as projects avoid CEQA review under this exemption. However, one of the exceptions to categorical exemptions provides that such exemptions "are inapplicable when the cumulative impact of successive projects of the same type in the same place, over time is significant."[79]

CBE argues that the environmental effects listed in subdivisions (c) and (d) of Guidelines section 15332 necessarily foreclose the consideration of other effects such as aesthetics, cultural resources, water supply, and health and safety. That is not correct. An important exception to categorical exemptions, based on the *Chickering* decision, provides that a "categorical exemption shall not be used for a[] [particular] activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."[80] These other environmental effects that CBE mentions would constitute "unusual circumstances" under this exception for a project that otherwise meets the Guidelines section 15332 criteria. This is because a project that does meet the comprehensive environmentally protective criteria of section 15332 normally would not have other significant environmental effects; if there was a reasonable possibility that the project would have such effects, those effects would be "unusual circumstances" covered by the section 15300.2, subdivision (c) exception. In this way, these other effects would fall within the concept of unusual circumstances set forth in *Azusa*: "[unusual] circumstances of a particular project (i) differ from the general circumstances of the projects covered by a particular categorical exemption, and (ii) those circumstances create an environmental risk that does not exist for the general class of exempt projects."[81]

CBE relies on *Chickering*'s statement "that where there is any reasonable possibility that a project or activity may have a significant effect on the

---

[77]See Guidelines section 15061, subdivision (b)(1), (2); see also Thresholds of Significance, reprinted in Bass, CEQA Deskbook, appendix 10, *supra*, page 24; Remy, CEQA Guide, *supra*, pages 84-85.

[78]CEQA section 21084.

[79]Guidelines section 15300.2, subdivision (b); see Remy, CEQA Guide, *supra*, page 102.

[80]Guidelines section 15300.2, subdivision (c).

[81]*Azusa*, *supra*, 52 Cal.App.4th at page 1207.

environment, an exemption would be improper,"[82] and on *Mountain Lion*'s reiteration that "[a]ny activity that may have a significant effect on the environment cannot be categorically exempt."[83] As we have explained, these statements cannot be read so broadly as to defeat the very idea underlying CEQA section 21084 of *classes* or *categories* of projects that *generally* do not have a significant effect on the environment. Instead, these statements provide the basis for the "unusual circumstances" exception of Guidelines section 15300.2, subdivision (c).

## DISPOSITION

The judgment is affirmed, except with respect to Guidelines section 15064(i)(3) and Guidelines section 15152(f)(2)'s incorporation of Guidelines section 15064(i)(3), as explained herein. Respondents to the appeal and to the cross-appeal are each awarded their respective costs. Requests for attorney fees should be made to the trial court.

Morrison, J., and Callahan, J., concurred.

On November 21, 2002, the opinion was modified to read as printed above.

---

[82]*Chickering, supra,* 18 Cal.3d at page 206.
[83]*Mountain Lion, supra,* 16 Cal.4th at page 124.